IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PHILLIP ROSSI, | § | |
| | § | No. 374, 2015 |
| Defendant Below-Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID Nos. 1208010002, |
| | § | 1204018462, 1210000519, and |
| Plaintiff Below-Appellee. | § | 1209011646 |

Submitted: March 2, 2016
Decided: March 24, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **SEITZ**, Justices.

Upon appeal from the Superior Court. **REVERSED AND REMANDED**.

Robert M. Goff, Esquire, Office of Public Defender, Wilmington, Delaware, for Appellant.

Gregory E. Smith, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

**STRINE**, Chief Justice:

# I.    INTRODUCTION

After being out of prison for two days and while on probation, Phillip Rossi was spotted at a JCPenney department store with a woman who was believed to have stolen almost $200 of merchandise.  Rossi was the suspected lookout.  The alleged scheme culminated in Rossi supposedly returning the stolen items to a different JCPenney for store credit later that same day.  Criminal charges followed soon after the incident.  And although the State entered a nolle prosequi on all charges against Rossi subject to certain conditions, it nonetheless sought to revoke Rossi's probation, and the Superior Court found that Rossi had violated terms of his probation by shoplifting.

On appeal, Rossi argues that the State did not present an adequate record upon which the Superior Court could find that the alleged shoplifting occurred.  Thus, Rossi argues, the Superior Court could not find that he violated probation by shoplifting.

The State's burden to prove a violation of probation is much lighter than it is to convict a defendant of a crime.  All that the State must do is prove by a preponderance of the evidence that the "conduct of the probationer has not been as good as required by the conditions of probation."[1]  And, the State can support its case by relying upon hearsay evidence.  But, under long-standing precedent that

---

[1] *Collins v. State*, 897 A.2d 159, 160 (Del. 2006).

1

the State does not ask us to revisit—specifically, *Brown v. State*[2] and *Collins v. State*[3]—the State must present some competent evidence that supports a finding that the defendant violated probation. Competent evidence is evidence that would be admissible at trial and that tends to prove two critical factors necessary to a violation of probation finding: i) an act constituting a violation occurred; and ii) the defendant is linked to that act.[4] In *Collins*, we reversed a finding of a violation of probation because, even though there was competent evidence showing that a crime occurred, there was no admissible evidence linking the defendant to the crime.[5] Here, we confront a similar situation. The only piece of competent evidence the State produced showed that Rossi was at the JCPenney on the key date in question. But, the State did not introduce any competent evidence that showed a crime had been committed there. Adhering to *Collins*, we reverse.

## II. BACKGROUND

The only undisputed fact in this case is that on April 14, 2015, Rossi and his girlfriend, Rachel Thomas, were at the JCPenney store inside the Christiana Mall.

The State claimed that, based on information obtained from a police investigation, Thomas was stealing merchandise while Rossi was acting as the lookout. The State alleges that there is a surveillance video showing Rossi and

---

[2] 249 A.2d 269 (Del. 1968).
[3] 897 A.2d at 159.
[4] *Id.* at 160–62; *Brown*, 249 A.2d at 272.
[5] *Collins*, 897 A.2d at 162.

Thomas at the store, and the JCPenney loss-prevention manager saw the two leaving the mall together. Less than an hour later, Rossi allegedly arrived at a different JCPenney store and returned the stolen items in exchange for store credit. And, in making the exchange, Rossi presented his photo identification to store personnel. Thomas told essentially the same set of facts to Delaware State Police Corporal Thomas Rhoades, but she claimed that it was Rossi's idea to shoplift "because he was getting sick."[6] Corporal Rhoades questioned Rossi within days after the incident, and Rossi admitted to being at the Christiana JCPenney with Thomas, but nothing more.

On April 20, the State charged Rossi for theft under $1,500, conspiracy third degree, shoplifting under $1,500, and receiving stolen property. But, it ultimately entered a nolle prosequi as to all charges against him subject to three conditions, one of which required Rossi to pay $194.31 in restitution to JCPenney.

On April 30, Rossi's probation officer filed a report with the Superior Court alleging that Rossi had violated the terms of his probation by shoplifting. A contested violation-of-probation hearing was held on July 15. The State presented only one witness to establish that the alleged shoplifting occurred, and that was Corporal Rhoades. The State did not present any physical evidence, photographs,

---

[6] App. to Opening Br. at 27 (Testimony from Corporal Rhoades). The record is not clear as to what "getting sick" meant.

video, or § 3507 statements.[7] Corporal Rhoades had no personal knowledge of what occurred at the JCPenney; he had only information that he gathered after the event from witnesses with direct knowledge, principally the loss-prevention manager.[8]

Corporal Rhoades's testimony was essentially as follows: He went to the Christiana JCPenney on April 16 or April 17 and spoke with the loss-prevention manager, who told him that there was video surveillance showing Rossi acting as a lookout for Thomas. Corporal Rhoades never watched the surveillance video, but he saw what the manager told him were still images from the video, which he compared to other images of potential suspects and used to determine that Rossi and Thomas were the suspects. The manager also told Corporal Rhoades that Rossi went to another JCPenney to return the stolen items in exchange for store credit. Corporal Rhoades also testified as to his own direct conversations with Thomas and Rossi.

During closing argument, Rossi relied on this Court's rulings in *Brown* and *Collins* and argued that, aside from his own statement to Corporal Rhoades, everything else was inadmissible hearsay. He further argued that although the

---

[7] 10 *Del. C.* § 3507 ("Use of prior statements as affirmative evidence").
[8] App. to Opening Br. at 33 (Testimony of Corporal Rhoades):

| Defense: | So, everything about the description of the crime that's alleged to have taken place, was described to you by Adrian Wilson, the [loss-prevention manager], correct? |
|---|---|
| Rhoades: | That's correct, sir. |

4

Superior Court may consider inadmissible hearsay at a violation-of-probation hearing, there must be some competent, admissible evidence that shows he shoplifted, and that no evidence of that kind was presented.[9]

The Superior Court found that there was "overwhelming hearsay evidence which is admissible to show that [Rossi] participated in the shoplifting."[10] Addressing Rossi's argument, the court noted *Collins* and went on to find that there was competent evidence that connected Rossi to the crime:

> Looking at the *Collins* case, I need to see competent evidence that relates the defendant to the crime.
>
> Here, I find that competent evidence in the form of the photograph that was identified by the police officer as being that of the defendant, the defendant's statement that he was at the store, and the girlfriend's statement that the defendant participated in the crime; and, therefore, I find the defendant in violation of his probation.[11]

After ruling that Rossi violated probation, the Superior Court sentenced him to three years in prison with credit for time previously served. This appeal followed.

---

[9] Rossi argued the following at the hearing: "[C]ompetent evidence, [as] interpreted under *Brown vs. State* at 249 A.2d 269 from 1968, and then reaffirmed by *Collins vs. State*, 897 A.2d 159, 2006, is, that competent evidence is evidence that would be admissible at trial." Transcript of Contested Hearing at 29–30, *State v. Rossi*, Cr. ID Nos. 1208010002, 1204018462, 1210000519, 1209011646 (Del. Super. July 15, 2015).

[10] App. to Opening Br. at 46 (Superior Court's Ruling).

[11] *Id.* at 47–48.

## III. ANALYSIS

We review the Superior Court's decision to revoke probation for abuse of discretion.[12]

The parties' duel over whether competent evidence supported the Superior Court's finding turns on the application of settled principles of Delaware law. The State shoulders a less hefty weight in a violation-of-probation proceeding than in a criminal trial.[13] Instead of having to prove its case beyond a reasonable doubt, the State need only show by a preponderance of the evidence that the defendant violated probation.[14] And the usual hearsay prohibitions are non-existent.[15] But, that does not mean the State can rely entirely on inadmissible hearsay.[16] There must be "some competent evidence to prove the violation asserted."[17]

"Competent evidence" has not been expressly defined, but a close reading of the relevant case law reveals its definition to be straightforward: It is evidence that would be admissible in a criminal trial and is proof that the defendant violated the

---

[12] *See Collins*, 897 A.2d at 162; *Brown*, 249 A.2d at 271–72 ("Just as probation is an act of grace, revocation of probation is an exercise of broad discretionary power; and on appellate review, the question may be limited to whether there has been an abuse of such discretion.") (internal quotation marks omitted).

[13] *Stigile v. State*, 2015 WL 3938205, at *2 (Del. June 25, 2015).

[14] *Id.*

[15] *Collins*, 897 A.2d at 160.

[16] *Id.* at 160–61; *Brown*, 249 A.2d at 272.

[17] *Brown*, 249 A.2d at 272.

terms of his probation.[18] Inadmissible hearsay, without some corroborating admissible evidence, is "a basis too untrustworthy [to terminate a person's freedom]."[19]

Rossi claims that the only piece of competent evidence admitted at the violation-of-probation hearing was his own statement, which came in through Corporal Rhoades's testimony. But, Rossi notes that the statement only contained his admission to being at the JCPenney with Thomas. Rossi said nothing about the alleged shoplifting. Thus, he asserts that there is not competent evidence that both i) shows a crime occurred; and ii) links him to that crime. Without competent evidence also tending to show a crime had been committed that day at the JCPenney, the State, Rossi argues, fell short of its light burden.

To parry this thrust, the State argues that several pieces of the record were competent evidence for purposes of finding that the alleged shoplifting occurred. In addressing this case, we stress that the State has not asked us to overturn or

---

[18] *See, e.g.*, *Stigile*, 2015 WL 3938205, at *1–2 (holding that defendant's admission to possessing drugs was competent evidence); *Jenkins v. State*, 8 A.3d 1147, 1152–53 (Del. 2010) (holding that testimony from a police officer with personal knowledge that defendant violated probation, among other things, was competent evidence); *Kurzmann v. State*, 903 A.2d 702, 716–18 (Del. 2006) (holding that admissible hearsay and in-court testimony from a witness was "sufficient competent evidence" for finding that the defendant violated probation); *Collins*, 897 A.2d at 161 & n.9 (citing *Bunting v. State*, 870 A.2d 1191, 2005 WL 580308 (Del. Mar. 7, 2005); *White v. State*, 844 A.2d 991, 2004 WL 527935 (Del. Mar. 12, 2004); *Hester v. State*, 791 A.2d 750, 2002 WL 243323 (Del. Feb. 13, 2002); *State v. Gatlin*, 2003 WL 23095682 (Del. Super. Dec. 17, 2003)); *Brown*, 249 A.2d at 272.

[19] *Brown*, 249 A.2d at 272.

modify *Brown* and *Collins* in any respect, but tries to argue that it satisfied the requirements established by those cases.

To isolate the key question before us, we proceed in this manner: We first examine the State's arguments that there were several pieces of competent evidence introduced at the violation-of-probation hearing other than Rossi's own out-of-court statement to Corporal Rhoades. After addressing each argument and explaining why we conclude they lack merit, we focus on the one piece of competent evidence that was presented at the violation-of-probation hearing, which was Rossi's admission to being at the Christiana JCPenney with Thomas. We then examine whether that testimony was sufficient under our case law to establish that Rossi took part in the alleged shoplifting and to allow the finding of a violation of probation against Rossi to stand.

### A. The Only Competent Evidence The State Presented Was Rossi's Admission To Being At The JCPenney

The State argues that it presented sufficient competent evidence at the violation-of-probation hearing through Corporal Rhoades's testimony, which was based on his direct conversations with Rossi, Thomas, and the loss-prevention manager. Of the evidence to which Corporal Rhoades testified at the hearing, the State contends that the following pieces were sufficient to support a finding that Rossi shoplifted: i) Thomas's statement to the police; ii) Rossi's agreement to pay JCPenney restitution as a condition of the nolle prosequi; iii) Corporal Rhoades's

8

testimony regarding the still images; and iv) Rossi's admission to being at the JCPenney with Thomas. We address each one in turn.

First, the State claims that Thomas's statement to the police accusing Rossi of planning the shoplifting—made after the criminal act was accomplished and while being questioned by police—was a statement from a co-conspirator in the course and in furtherance of the conspiracy, so it is not hearsay according to Rule 801(d)(2)(E).[20] This does not square with the plain wording of Rule 801(d)(2)(E) or any interpretation of that Rule or its federal equivalent.[21]

Rule 801(d)(2)(E) provides that an out-of-court statement is not hearsay if it is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."[22] By the Rule's plain words, the conspiracy must be ongoing, not a thing of the past.[23] The Rule also requires that, in order to be non-hearsay, the statement must be made for the purpose of furthering the interests of the

---

[20] D.R.E. 801(d)(2)(E).

[21] *See, e.g.*, *Charbonneau v. State*, 904 A.2d 295, 313–15 (Del. 2006); *Smith v. State*, 647 A.2d 1083, 1089 (Del. 1994); 5 WEINSTEIN'S FEDERAL EVIDENCE § 801.34, at 801-112–125 (2d ed. 2015) (citing federal cases).

[22] D.R.E. 801(d)(2)(E).

[23] *E.g.*, *Smith*, 647 A.2d at 1089 (citing *Lutwak v. United States*, 344 U.S. 604, 616 (1953)) ("[G]enerally a conspiracy terminates upon accomplishment of the principal objective unless specific evidence is introduced indicating that the scope of the original agreement included acts taken to conceal the criminal activity."); WEINSTEIN'S, *supra* note 21, § 801.34[4][a], at 801-112 ("To be admissible as a coconspirator statement, the statement must be made 'during' the conspiracy. Statements made after the main objective of the conspiracy has been either achieved or thwarted do not fall within the rule's coverage.").

conspiracy.[24] Thomas's statement to Corporal Rhoades does not satisfy these requirements because, at the time it was given, the alleged conspirators accomplished their goal and the statement was inimical to the conspiracy. Accordingly, Rule 801(d)(2)(E) does not apply and Thomas's statement to Corporal Rhoades was inadmissible hearsay.

The State argues next that Rossi's agreement to the nolle prosequi conditions, and specifically his agreement to pay restitution to JCPenney, is competent evidence. Here, the problem is not one of hearsay.[25] The problem is instead that the agreement is inadmissible under Rule 410, which involves the "[i]nadmissibility of pleas, offers of pleas and related statements."[26] The Rule states in pertinent part:

> [E]vidence of a plea of guilty later withdrawn with court permission, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas

---

[24] *E.g.*, *Charbonneau*, 904 A.2d at 313–15 (holding that a statement from co-conspirator trying to solicit another to join the conspiracy was made for the purpose of furthering the conspiracy); *Reyes v. State*, 819 A.2d 305, 313 (Del. 2003) (holding that co-conspirator's statements made in an attempt to conceal a crime were in furtherance of the conspiracy); WEINSTEIN'S, *supra* note 21, § 801.34[5], at 801-117 ("[I]t allows admission of any statement that can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy.") (internal quotation omitted); *id.* § 801.34[5], at 801-125 ("Key in the determination is whether it was the speaker's purpose to advance the conspiracy.").

[25] Rossi's agreement to pay restitution to JCPenney may be admissible under Rule 801(d)(2) as a statement by a party-opponent or Rule 804(b)(3) as a statement against interests if it were not for Rule 410.

[26] D.R.E. 410.

or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.[27]

Because nolle prosequi is a total dismissal,[28] which is separated even further from a finding of guilt than the other actions listed in Rule 410, it falls within Rule 410's reach and is inadmissible.[29] Notably, the Superior Court itself did not use the nolle prosequi condition as a basis to find that Rossi violated probation.[30]

The State also makes a one-sentence claim, unsupported by legal authority, that Corporal Rhoades's testimony regarding the still images that were allegedly taken from the surveillance video is sufficient competent evidence. But, the images were not offered as evidence and Corporal Rhoades was not in a position to authenticate them. Relatedly, Corporal Rhoades's testimony is inadmissible hearsay because the only reason that he believes those images came from the surveillance video is because that is what the loss-prevention manager told him.

---

[27] *Id.*

[28] *See Thornton v. State*, 1998 WL 309837, at \*1 (Del. June 3, 1998) (quoting *Winston v. State*, 1993 WL 22014 (Del. Jan. 11, 1993)) ("A nolle prosequi is merely a decision by the Attorney General not to prosecute a particular charge."); 21 AM. JUR. 2D *Criminal Law* § 720, at 789 (2008) ("A nolle prosequi order is not a final disposition of a criminal case, but leaves the matter in the same condition as before the charges were filed. In other words, it lays to rest that indictment and the underlying warrant without disposition, as though they had never existed.").

[29] "Rule 410's exclusion of [pleas, offers of pleas, and related statements] represents a substantive policy to promote the disposition of criminal cases by compromise." 2 WEINSTEIN'S FEDERAL EVIDENCE § 410.03[2], at 410-9 (2d ed. 2015); *see also id.* § 410.06[3], at 410-14 ("The use of a nolo plea as tantamount to an admission of guilt would defeat one of the primary purposes of 410—to encourage compromise in criminal cases, which, in turn, lessens the burden on courts, defendants and prosecutors, producing a more efficient criminal justice system.").

[30] *See supra* note 11 and accompanying text; *cf. Cropper v. State*, 2000 WL 139992, at \*4 (Del. Jan. 21, 2000) (reviewing appeal from sentencing order for abuse of discretion and only reviewing the evidence that the Superior Court "actually relied upon").

11

Put simply, it is not clear how Corporal Rhoades's testimony that he saw a photo of people at a JCPenney on a day he was not there was evidence at all. If it were, any witness who met Rossi could be shown a photo or video of out-of-court events the witness did not see and testify that Rossi was the person depicted. Thus, Corporal Rhoades's testimony regarding the still images is not competent evidence showing that Rossi violated probation by shoplifting.

Therefore, the only part of Corporal Rhoades's testimony that would have been admissible at trial was his recitation of Rossi's admission to being at the JCPenney with Thomas.[31] Accordingly, our focus is narrowed to determining whether Rossi's admission is sufficient competent evidence to allow the Superior Court to find a violation of probation.

## B. *Brown* And *Collins* Require Competent Evidence That A Crime Occurred And That The Crime Involved The Defendant

The resolution of this case therefore comes down to what the requirement to submit "some competent evidence to prove the violation asserted" means.[32] Must competent evidence include both admissible evidence i) that a crime occurred; and ii) linking the defendant to that crime? Or is it sufficient that the State submit competent evidence that goes to one of those factors as long as there is hearsay or

---

[31] Rossi's admission is non-hearsay under Rule 801(d)(2) because it is a statement from a party-opponent.
[32] *Brown*, 249 A.2d at 272.

other traditionally inadmissible evidence rationally supporting the existence of the other factor?

This Court's decisions in *Brown* and *Collins* are instructive in resolving that issue. *Brown* established the principle that "a probation revocation may not stand unless" there is "some competent evidence" apart from "pure hearsay" that tends to "prove the violation asserted."[33] In *Brown*, the State claimed that the defendant violated probation by committing or assisting in the commission of an abortion.[34] The State's only witness at the violation-of-probation hearing was the probation officer, and "his only sources of information about the alleged probation violation were newspaper accounts and a copy of a 10 page police investigation report."[35] The Superior Court found that the defendant violated probation.[36] On appeal, this Court looked to precedent from other jurisdictions, which discussed the need for "ample evidence" or "ample competent proof," apart from inadmissible hearsay, that is sufficient to find that the defendant violated probation.[37] This Court observed that "pure hearsay" was "a basis too untrustworthy" to terminate a person's freedom, and it held that "there being no competent evidence upon which

---

[33] 249 A.2d at 272.
[34] *Id.* at 270.
[35] *Id.*
[36] *Id.* at 271.
[37] *Id.* at 272 (quoting *United States v. Register*, 360 F.2d 689, 689 (4th Cir. 1966); *State v. Elder*, 95 N.W.2d 592, 595 (S.D. 1959)).

to base the exercise of sound judicial discretion, the revocation of the probation and the imposition of the prison sentence constituted an abuse of discretion."[38]

In sum, *Brown* requires the State to present proof of the alleged violation, which, in *Brown* and in this case, is proof that the defendant committed a crime.[39] It follows that, in cases where the State alleges that the defendant violated probation by committing a crime, there must be some proof other than inadmissible hearsay that shows a crime occurred *and* the defendant committed it.[40]

More recently in *Collins*, this Court reaffirmed *Brown* and held that when the State claims that a defendant violated probation by committing a crime, the State must produce competent evidence that shows not only that a crime occurred, but also that the defendant is linked to the crime.[41] In *Collins*, the State claimed that the defendant violated probation when he broke into his ex-girlfriend's home and caused extensive damage inside.[42] The only evidence the State presented at the violation-of-probation hearing was testimony from the investigating police officer.[43] Although the officer personally observed the damage at the home, he had no personal knowledge of what caused that damage.[44] The Superior Court found that the defendant violated probation based on the officer's personal observation of

---

[38] *Id.*
[39] *Id.*
[40] *See id.*
[41] *Collins*, 897 A.2d at 162.
[42] *Id.* at 160.
[43] *Id.*
[44] *Id.*

14

the damage and his recitations of inadmissible hearsay.[45]  On appeal, this Court

noted that "[a]lthough physical evidence of the damage to the apartment may have

indicated that criminal conduct had occurred, it did not connect Collins to that

crime."[46]  This Court reversed, explaining that because the only evidence linking

the defendant to the crime was inadmissible hearsay, "the revocation of his

probation was an abuse of discretion."[47]

In this case, Rossi's admission to being at the JCPenney would have been

powerful competent evidence connecting him to the crime had there also been

competent evidence that a crime was committed.  Had the State put on one of the

witnesses from JCPenney who could have presented competent evidence that

JCPenney had been victimized by theft, Rossi's admission would have put him at

the scene of the crime, on the right day and time, and with the alleged co-

conspirator.  But, the problem under the evidentiary standard is simple: *Brown* and

*Collins* require competent evidence of two facts, which are that i) a crime was

committed; and ii) the defendant is linked to the crime.  Rossi's admission satisfied

only the second part and not the first.  The question therefore is whether the State

needs competent evidence of both, or can rely on hearsay to satisfy one, if it has

competent evidence as to the other.  *Brown* and *Collins* would seem to say both.

---

[45] *Id.*

[46] *Id.* at 162.

[47] *Id.*

Here, there is competent evidence establishing a link to an alleged crime, but no competent evidence that the alleged crime occurred. Without competent evidence that shows a crime occurred, under *Collins* (and *Brown*), the Superior Court should not have revoked Rossi's probation.

Although the State's burden in proving a violation of probation is not an onerous one, that burden has long required that the State at least present some competent evidence that shows the defendant did not comply with the terms of his probation. No doubt that burden will require the State to put on more than one witness in certain circumstances, or to use a witness with personal knowledge rather than an investigator as a witness in others. But given the serious consequences that can result from a violation of probation—as exemplified here by the three-year sentence reinstated because of a shoplifting that the State chose not to prosecute directly as a crime—the bottom line requirement set by *Brown* and *Collins* is a reasonable one that provides the responding probationer with an important procedural protection, while still leaving the State well-positioned to prosecute probation violations much more inexpensively and efficiently than crimes.

## IV. CONCLUSION

Therefore, this matter is reversed and remanded to the Superior Court for a new hearing consistent with this opinion.

16