# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,    :

           :   ID No. 1901016324

    v.       :   In and For Kent County

           :

DARRYL J. COFIELD,    :

           :

    Defendant.   :


## ORDER

Submitted: January 21, 2020
Decided: January 27, 2020

On this 27th day of January 2020, after considering the evidence presented at a contested violation of probation hearing and the arguments of the parties, it appears to the Court that:

1. Probation and Parole charged Probationer Darryl Cofield with violating a condition of his probation imposed after a third offense driving under the influence of alcohol conviction. The State alleges that he drank alcohol based on a drinking event report from a transdermal continuous alcohol monitoring device ("TAD"). Mr. Cofield contests the allegation. He denies that he drank alcohol and claims that the December 19, 2019 positive result for alcohol use came from his use of Icy Hot on the same ankle where Probation and Parole placed his TAD. At Mr. Cofield's request, the Court held a contested VOP hearing on January 13, 2020.

2. In the Court's September 19, 2019 sentence, it sentenced Mr. Cofield to one year of Level V, further suspended after three months pursuant to 21 *Del. C.* § 4177(d)(9), to be followed by three months of Level IV home confinement,

followed by one year of Level II probation. Section 4177(d)(9) of Title 21 permits the Court to suspend what would otherwise have been a one-year minimum sentence for ninety days incarceration. That paragraph, however, provides the Court discretion to do so only if a defendant meets certain statutory requirements. The requirement relevant to Mr. Cofield's case requires that "the offender maintain a period of not less than 90 consecutive days of sobriety as measured by a TAD device or through periodic breath or urine analysis[.]"[1]

3. After an evidentiary hearing, the Court finds the following facts to a preponderance of the evidence. Kent County Probation and Parole's TAD officer, Officer Brower, fitted Mr. Cofield with a TAD device on December 11, 2019. Thereafter, Probation and Parole requested Mr. Cofield to return to the office on December 17 or 18, 2019 to exchange his TAD bracelet. On December 19, 2019, Mr. Cofield's TAD device alerted to a suspected alcohol event. When Officer Brower next returned to the office, after the alert and after the weekend, he contacted BI Inc. ("BI"), the third-party contractor who administers TAD devices for the State of Delaware. A BI technician confirmed with Officer Brower by telephone that Mr. Cofield's TAD alert represented a drinking event. The BI telephonic confirmation ruled out a false positive from any other event, such as the use of cough syrup or mouthwash. Officer Brower then arrested Mr. Cofield for a violation of probation and filed a report.

4. In a violation of probation hearing, the burden is on the State to prove by a preponderance of the evidence that the defendant violated his probation.[2] Hearsay is admissible at violation of probation hearings.[3] However, the State cannot

---

[1] 21 *Del. C.* § 4177(d)(9).

[2] *Rossi v. State*, 140 A.3d 1115, 1120 (Del. 2016) (citation omitted).

[3] *Id.* at 1117 (quoting *Collins v. State*, 897 A.2d 159, 160 (Del. 2006) to explain that the State must prove by a preponderance of the evidence that the "conduct of the probationer has not been as good as required by the conditions of probation").

rely entirely upon hearsay.[4]  There must be "some competent evidence to prove the violation asserted."[5]  Competent evidence is "evidence that would be admissible in a . . . trial and is proof that the defendant violated the terms of [his or her] probation."[6]  Furthermore, "[i]nadmissible hearsay, without some corroborating admissible evidence, is "a basis too untrustworthy [to terminate a person's freedom]."[7]

5.      Here, Mr. Cofield argues that the State's case rests solely upon hearsay.  Namely, BI leases and monitors Delaware's TAD devices.  BI personnel also confirm the results and relay the confirmations by email and telephone to Delaware Probation and Parole.  Mr. Cofield argues that because the officers responsible for deploying the devices cannot explain the science behind the equipment or attest to their calibration, the State cannot meet its burden by relying on the results alone.  The State counters that the relevant Delaware Code provision requires that a TAD device monitor sobriety for a period of ninety days as a condition of probation.  The State argues that baked into that statutory requirement is a condition of probation providing that a positive reading alone is sufficient to qualify as a violation.

6.      The State correctly recognizes that the General Assembly permits the Court to suspend a one-year minimum sentence after ninety days only if the defendant meets certain conditions.[8]  The General Assembly's decision to condition a suspended sentence upon the monitoring of a particular scientific device—a transdermal continuous alcohol monitoring device—demonstrates its policy judgment that alcohol use during that period should constitute a violation of probation.

---

[4] *Id.* at 1122.

[5] *Brown v. State*, 249 A.2d 269, 272 (Del. 1968).

[6] *Rossi*, 140 A.3d at 1119.

[7] *Id.* at 1119–20 (quoting *Brown*, 249 A.2d at 272).  *See also State v. Hopkins*, 2016 WL 6958697, at *2 (Del. Super. Nov. 23, 2016) (explaining in the context of a suppression hearing contesting probable cause that hearsay alone is an insufficient basis for probable cause).

[8] 21 *Del. C.* § 4177(d)(9).

7. Due process requires another layer of analysis other than relying solely upon a test result, however. A contested violation of probation hearing does not hinge on the validity or appropriateness of including a condition in the Court's order. Rather, it involves the Court's determination regarding whether the probationer violated the condition. Notwithstanding the General Assembly's choice to include this condition permitting the suspension of mandatory time, the Court may revoke a defendant's probation only upon its finding of a violation of the condition. When doing so, the Court's function is the same as it is in any other contested violation of probation hearing.

8. The Court recognizes at the outset that Probation and Parole may rely upon hearsay from a third-party. In fact, it may rely primarily upon hearsay, such as TAD results or urinalysis results, when proving violations of probation. Nevertheless, some competent evidence must support the third-party's report that the probationer used alcohol.

9. In this regard, there is no meaningful distinction between this case and cases involving probationer drug and alcohol urine testing. The Delaware Supreme Court's decision in *Hester v. State*[9] is instructive regarding the quantum of competent evidence necessary to corroborate a probationer's positive drug or alcohol test. There, the Court recognized that an out-of-office confirmation of a positive urinalysis test was fully admissible in a violation of probation hearing.[10] Nevertheless, in the face of a due process challenge, the Court in *Hester* recognized that additional evidence of a violation was necessary to support a finding of violation.[11] The Court found that the testimony of a Treatment Access Center

---

[9] 791 A.2d 750, 2002 WL 24332, at *1–2 (Del. 2006) (TABLE) (citing *Brown*, 249 A.2d at 272 when determining a urinalysis report and a case manager's testimony were sufficient evidence to show the defendant committed a violation of probation).

[10] *Id.* at *1.

[11] *Id.*

counselor that administered the urinalysis was sufficient to constitute competent evidence supporting the finding of violation.[12]  When so finding, the Court observed that she "testified in detail regarding the procedures for the test and identified the report from the toxicology laboratory reflecting that the sample . . . tested positive for cocaine."[13]

10.    In the case at hand, the record contains insufficient competent evidence to support a finding of violation.  Here, to revoke probation, the Court would need to do so based upon the testimony of a witness that had "no first-hand knowledge of the events constituting the violation."[14]  Here, Officer Brower testified credibly that he initially fitted Mr. Cofield with an original TAD unit.  He also confirmed that Probation and Parole later fitted Mr. Cofield with a new TAD unit before the alert on December 19, 2019.  He cited calibration related concerns as the reason for substituting the TADs.  While Officer Brower testified that, by practice, he would have expected to have been the one to substitute the unit, he qualified that by stating "*I think* I put a new one on him."  Mr. Cofield testified contrarily that on December 17 or 18, 2019, a female officer called him to the Dover office to switch the unit because of calibration issues.

11.    Absent from the record is any evidence regarding calibration of the unit. Here, the Court need not address to what extent, if any, evidence regarding the device's calibration is necessary for foundational purposes in a violation of probation hearing.  Apart from that issue, the record does not contain sufficiently detailed evidence regarding the process for fitting the bracelet or the procedures

---

[12] *Id.*

[13] *Id.*

[14] *See Collins v. State*, 897 A.2d 159, 160–61 (Del. 2016) (citation omitted) (confirming this principle in a case where hearsay regarding an alleged victim's accusation of a crime was insufficient, notwithstanding broken items and property damage consistent with the fact that *a* crime was committed, but not that the defendant was the one who committed it).

regarding what measures, if any, are used to insure that the equipment would produce an accurate result. Nor did the State present any evidence of record corroborating the test report, such as an admission of violation, testimony regarding an odor of alcohol about the defendant, a beer can or bottle, or observations regarding Mr. Cofield's demeanor close in time to the TAD reading. While the Court finds Officer Brower's testimony credible in all respects, he candidly did not have a specific recollection of being the one who fitted the new (and relevant) bracelet on Mr. Cofield on December 17 or 18. The positive test report came within two days of this fitting. In contrast, Mr. Cofield's sworn testimony provided that (1) he did not drink alcohol, and (2) that a female officer—who did not testify—performed the "swap." The Court declines to disregard Mr. Cofield's testimony. After observing his demeanor, and evaluating his testimony in conjunction with the other evidence, the Court accepts his testimony on this issue.

12. After the hearing, at the Court's request, the parties addressed the issue of what is the least amount of competent evidence necessary to corroborate a TAD report. The Court requested that the parties focus on the potentially corroborative facts in this case—Officer Brower's initial installation of the TAD—and whether that constituted sufficient competent evidence.

13. Mr. Cofield cited the Delaware Supreme Court's decision in *Grandelli v. State*,[15] which is helpful for context but is not controlling. As in the case at hand, in its *Grandelli* decision, the Court examined what was sufficient competent evidence to support a TAD drinking event report.[16] The State, in that case, presented a BI engineer's expert testimony in the hearing.[17] His testimony included that BI calibrated the TAD every six months and he identified the date that BI had last

---

[15] 2014 WL 4670860 (Del. 2014) (TABLE).
[16] *Id.* at *3.
[17] *Id.* at *2.

calibrated that probationer's TAD.[18]  The engineer further testified regarding how the TAD worked from a scientific perspective and that, in his opinion, the TAD worked properly on the day of the alleged violation.[19]  Given that testimony, in conjunction with the test report, the Delaware Supreme Court found sufficient evidence to support the Superior Court's finding of violation.[20]

14.    In the *Grandelli* decision, the Delaware Supreme Court did not set the floor for the quantum of competent evidence necessary to support a finding of violation in the TAD context.  Significantly less facts than those present in *Grandelli* would be necessary.  Here, this Court's finding does not hinge on a lack of expert testimony, calibration records, or testimony from a BI representative.  Rather, in this case, the quantum of evidence presented did not meet the floor set in *Hester v. State*.[21]  Third-party testing is a necessary mechanism to enforce drug and alcohol related conditions of probation.  However, to corroborate a third-party generated TAD result, the proponent must at a minimum still testify in detail regarding the procedures available to Probation and Parole to ensure the device is accurate.  Here, the State need not have offered evidence as strong as in the *Grandelli* matter.  It did not, however, meet its burden as recognized in the *Hester* case.

15.    In conclusion, Mr. Cofield did not violate a condition of his probation. He remains on Level IV Home Confinement until successful completion of the ninety-day Intensive Outpatient Treatment Program required by 21 *Del. C.* § 4177(d)(9).  All other conditions of his probation, including the ninety-day TAD monitoring requirement, also remain in effect.

---

[18] *Id.*
[19] *Id.*
[20] *Id.* at *3.
[21] *Hester*, 2002 WL 24332, at *1–2.

**WHEREFORE**, the Court finds that Mr. Cofield did not violate the conditions of his probation on December 19, 2019.

**IT IS SO ORDERED.**

Jeffrey J Clark

Judge