# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,                   :
                                     :       ID Nos. 1303012706
                                     :               1303004663
            v.                       :
                                     :
                                     :
DEVIN COLEMAN,                       :
                                     :
            Defendant.               :

Submitted: May 17, 2021
Decided:  May 27, 2021

## MEMORANDUM OPINION AND ORDER

*Defendant's Motion to Suppress* – **DENIED**
*Defendant's Probation and Conditional Release* - **REVOKED**

Devin Coleman, *Pro se.*

Stephen R. Welch, Jr., Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the State.*

**Clark, J.**

The Delaware Division of Probation and Parole ("P & P") seized two semi-automatic handguns and ammunition from Defendant Devin Coleman's residence after it executed an administrative search. At the time of the seizure, Mr. Coleman concurrently served conditional release and Level III probation.

P & P relied upon Probation and Parole Procedure 7.19 ("Procedure 7.19" or "the Procedure") to authorize the search. As a result of the search and a related investigation, (1) the police arrested Mr. Coleman on new drug and weapons charges (the "new charges"), and (2) P & P charged Mr. Coleman with violating probation and conditional release.

First, Mr. Coleman seeks to suppress the seized evidence from use in his probation and conditional release violation hearing (hereinafter "violation hearing" or "revocation hearing"). The Delaware Supreme Court authority provided in the *Walker v. State*[1] decision provides him a potential remedy. Namely, the *Walker* decision makes evidence inadmissible in a contested probation hearing if P & P seized it in contravention of Procedure 7.19.[2]

To decide the suppression issue, the Court held a virtual evidentiary hearing that spanned portions of four days.[3] There, the State demonstrated that P & P substantially complied with Procedure 7.19 for the reasons discussed below. As a result, Mr. Coleman's motion to suppress must be denied.

The second issue is whether Mr. Coleman should be found in violation of his probation and conditional release. After considering the lawfully seized evidence together with other evidence adduced from the hearing, the Court finds that he

---

[1] *Walker v. State,* 205 A.3d 823 (Del. 2019).

[2] *Id.* at 826-27.

[3] Mr. Coleman requested that his hearing proceed virtually because of delays caused by the pandemic, and the State did not object. Mr. Coleman later elected to proceed *pro se*, and maintained his request to proceed virtually. After considering the circumstances involved and for the reasons discussed in *State v. Kolaco,* 2020 WL 7334176, at *1 (Del. Super. Dec. 14, 2020), the Court elected to proceed virtually pursuant to Delaware's most recent Judicial Emergency Order.

1

violated both. As a result, both must be revoked. This memorandum provides the Court's reasons for denying his suppression motion and for revoking his probation and conditional release.

## I.     PROCEDEDURAL BACKGROUND

Through an attorney, Mr. Coleman contested the alleged violations of his probation and conditional release. At the outset, he filed a written suppression motion alleging that P & P did not substantially comply with Procedure 7.19. His motion did not challenge the legality of a wiretap investigation that provided much of the evidence that the State alleges supports P & P's justification for the search.[4]

During two prehearing conferences, counsel and the Court set the parameters for a virtual hearing that would address (1) the motion to suppress and (2) the substantive violations. Counsel then exchanged exhibits and streamlined the process. The Court then scheduled the virtual hearing for December 11, 2020.

At the beginning of the hearing, Mr. Coleman spoke privately with his attorney. He then abruptly requested to discharge his counsel. At that point, after a colloquy, the Court recognized Mr. Coleman's right to proceed *pro se* and then excused his attorney. Because Mr. Coleman had not directly participated in logistical preparations for the hearing, the Court continued the matter so he could prepare himself. Notwithstanding his *pro se* status, he requested to proceed with the hearing virtually and as soon as possible.

In the interim, new counsel entered an appearance for Mr. Coleman for the new charges that contemporaneously formed the basis for revoking his conditional release and probation. Because Mr. Coleman then had new counsel, the Court provided him the opportunity to explore whether his new attorney could also

---

[4] Mot. to Suppress, Nov. 21, 2020.

2

represent him in the revocation hearing. Mr. Coleman, however, declined and continued to represent himself. He did so after the Court, and his new counsel, advised him that actions he may take in the revocation proceedings could harm his defense of the new charges.

Over four separate hearing days, the Court heard evidence. When doing so, it first received evidence relevant to the suppression issue and reserved decision on that issue. At that point, the Court closed the suppression record. Next, the parties offered additional evidence to supplement the violation hearing record, in the event the Court was to deny the suppression motion. The Court then reserved decision regarding the revocation issue as well. After oral argument, the Court invited the parties to file supplemental written arguments. Mr. Coleman did, and the State did not.

## II.   FINDINGS OF FACT AFTER THE HEARING

The following are facts found by a preponderance of the evidence. Because the legality of the challenged search turns primarily on the quantity and quality of information provided to P & P, many of the following recited facts turn on who told what to P & P personnel.

Namely, the State arrested Mr. Coleman on June 22, 2020. It charged him with various weapons and drug charges. The new charges stemmed, in part, from evidence seized during P & P's administrative search of Room 117 of the Capitol Inn in Dover. At the time of Mr. Coleman's arrest, he had been conditionally released for approximately thirty days from a Level V sentence. Concurrently, he served a Level III probationary sentence. During all relevant times, Mr. Coleman's prior convictions made him a person prohibited from owning or possessing a firearm.

Shortly after the Department of Correction released Mr. Coleman in June 2020, a joint task force sought and received a wiretap warrant in Kent County. The task force monitored Mr. Coleman and other individuals' telephone calls pursuant to that warrant. Germanely, Mr. Coleman's written suppression motion did not challenge the legality of the wiretap;[5] rather, it alleged that P & P did not substantially comply with Procedure 7.19 when it searched his motel room.[6]

In the hearing on the motion, Probation Officer Porter testified that Officer Cunningham from the Dover Police Department gave him information regarding Mr. Coleman. The two officers worked together on the Governor's Task Force. In July 2020, police officers who participated in a larger task force, executed a wiretap, and intercepted calls from certain suspects, including Mr. Coleman. Although Officer Porter, as a probation officer, did not personally monitor the calls, he participated in that investigation. Namely, he surveilled Mr. Coleman.

Through Officer Cunningham, Officer Porter learned that Mr. Coleman made incriminating statements in a call. Specifically, Officer Cunningham told Officer Porter that he (1) recognized Mr. Coleman's voice on the call, and (2) confirmed that the number he monitored belonged to Mr. Coleman.[7] On that call, Mr. Coleman made several admissions. First, he explained to the other party that he had just purchased two semi-automatic handguns for $700, and he identified the firearms by manufacturer and caliber. Mr. Coleman also admitted to keeping his two new firearms in Room 117 at the Capitol Inn.

Shortly after Officer Cunningham told Officer Porter about the intercepted call, Officer Porter confirmed in the Delaware Automated Correction System

---

[5] *Id.*
[6] *Id.* ¶¶ 17-19.
[7] Officer Cunningham confirmed with Officer Porter that the telephone number that he monitored matched the number Mr. Coleman had given to P & P during his recent probation intake meeting.

("DACS") that Mr. Coleman had identified Room 117 as his residence for purposes of probation. Furthermore, shortly before the administrative search, Officer Porter surveilled Mr. Coleman and observed him enter Room 117. At that point, Officer Porter called his supervisor at P & P, Officer Duquette.

Within minutes of observing Mr. Coleman enter Room 117, Officer Porter explained to Officer Duquette what Officer Cunningham had told him about Mr. Coleman's phone call. Officer Porter credibly testified, and Officer Duquette credibly confirmed through his testimony, that the two discussed each of Procedure 7.19's factors. After doing so, Officer Duquette orally approved the search.

P & P then executed the administrative search approximately thirty minutes later. At the time of the search, Mr. Coleman was present in the room. During the search, P & P seized the two firearms, ammunition, heroin, and paperwork containing Mr. Coleman's name and address. A fingerprint examiner opined that Mr. Coleman's fingerprint was found on one of the magazines accompanying one of the weapons that he had admitted to purchasing and owning.

Thereafter, within twenty-four hours of the time of the search, Officer Porter digitally completed Procedure 7.19's checklist in DACS. Officer Duquette then also electronically approved the checklist in DACS.

After the search and seizure, the State filed new charges against Mr. Coleman. Separately, P & P detained Mr. Coleman on an administrative warrant to answer for alleged probation and conditional release violations based upon those new charges.

### III. MR. COLEMAN'S MOTION TO SUPPRESS

The recent Delaware Supreme Court decision in *Walker v. State* provides the relevant framework for the present motion. To resolve the matter, the Court will discuss that decision and Delaware's requirements for a lawful administrative search of a probationer's residence. Next, after examining the evidentiary record, the Court

will explain why the State demonstrated that P & P substantially complied with Procedure 7.19.

## A. Applicable Standards

In a suppression hearing that examines a search or seizure conducted without a warrant, the State has the burden to prove by a preponderance of the evidence that the search or seizure was justified.[8]  In the hearing, the Court sits as the finder of fact, weighs the credibility of the witnesses, and determines the weight due the evidence.[9]  Furthermore, the Court need not strictly apply the rules of evidence.[10] For instance, hearsay is admissible in a suppression hearing.[11]  The Delaware Rules of Evidence nevertheless serve as a guide.

Here, P & P seized evidence from the motel room that Mr. Coleman identified as his residence.  He seeks to suppress that evidence from use in the revocation hearing.  In *Walker v. State*, the Delaware Supreme Court held, as a matter of first impression, that P & P's failure to substantially comply with Procedure 7.19 requires suppression of evidence in a *probation hearing*.[12]  Prior to the *Walker* case, all Delaware Supreme Court and Superior Court authority addressed the suppression of evidence based upon an unlawful administrative search in only the criminal *trial* context.[13]

Germane to this case, the Supreme Court was not called upon in *Walker* to decide whether evidence should be suppressed in the conditional release context on

---

[8] *Hunter v. State*, 783 A.2d 558, 560-61 (Del. 2001).
[9] *Turner v. State*, 957 A.2d 565, 571 (Del. 2008); 2 WAYNE R. LAFAVE *et. al., Criminal Procedure* § 10.5(a) (4th ed. 2018).
[10] *State v. Holmes*, 2015 WL 5158374, at *8 (Del. Super. Sept. 3, 2015).
[11] *Id.*
[12] *Walker,* 205 A.3d, at 826.
[13] *See e.g., Culver v. State,* 956 A.2d 5, 15 (Del. 2008) (providing that evidence seized in violation of Procedure 7.19 must be suppressed from use *at trial*).

Procedure 7.19 grounds. Nevertheless, the *Walker* decision's holding, when considered in tandem with controlling statutes, demonstrates that the same approach applies to conditional release revocation hearings. Namely, because (1) 11 *Del. C.* §4321(d) limits P & P's authority to conduct searches to only those conducted "in accordance with Department procedures," and (2) P & P investigates and prosecutes conditional release violations pursuant to its statutory authority,[14] the holding in *Walker* applies equally to conditional release violations.

As to administrative searches in both contexts, the Delaware General Assembly passed enabling legislation that provided the Department of Correction authority to adopt regulations governing the warrantless searches (and arrests) of probationers and parolees.[15] In reliance on that statutory authority, the Department promulgated Procedure 7.19.[16] In order to justify an administrative search of a probationer's or conditionally released defendant's residence, the State must demonstrate that the search was reasonable and that P & P substantially complied with the Procedure.[17] Procedure 7.19 provides only one exception to its requirements: exigent circumstances.[18]

Although justification for such a search is sometimes referred to as an administrative warrant, there is no warrant involved. Rather, in the probation context, an administrative procedure, authorized in a highly regulated environment, permits a search based upon relaxed standards because a probationer has a decreased

---

[14] *See* 11 *Del. C.* §§ 4321(d), 4382 & 4383 (recognizing that P & P may conduct searches of individuals on probation and parole, and that periods of probation and conditional release run concurrently and must be prosecuted concurrently).

[15] *See* 11 *Del. C.* § 4321(d) (providing that probation officers may conduct searches of individuals under their supervision only in accordance with adopted procedures).

[16] *See* Delaware Department of Corrections Bureau of Community Corrections Probation and Parole Procedure No. 7.19 (amended effective May 17, 2016) (providing the requirements for a lawful administrative search) [hereinafter "*DOC BCC 7.19*"].

[17] *Fuller v. State*, 844 A.2d 290, 292 (Del. 2004).

[18] *Sierra v. State*, 958 A.2d 825, 829 (Del. 2008).

expectation of privacy. In that regard, probationers do not have the same liberties as other citizens.[19] In other words, on one hand, Procedure 7.19 permits a search based upon a lesser quantum of evidence. On the other hand, it prohibits searches based upon a P & P officer's unfettered discretion.[20]

A warrantless administrative search in this context requires reasonable articulable suspicion for the search.[21] As a result, *each of the factors* necessary to support such a search must be evaluated in terms of that quantum of evidence. When the Court reviews the lawfulness of the search, as in other areas of search and seizure analysis, reasonable suspicion turns on the totality of the circumstances.[22]

Regarding Procedure 7.19's requirements, the *probation officer* who seeks to justify a search must use P & P Form #506, which provides a specific Arrest-Search Checklist.[23] The Procedure specifies that the Arrest-Search Checklist "*is to be used for all arrests and searches* in the community, unless exigent circumstances exist forcing the Officer into action."[24] It also requires the requesting officer to hold a conference with his or her supervisor before the search and then to gain the supervisor's approval.[25]

The officer applying for the search must first, to the level of substantial compliance, independently assess and then discuss the following factors with his or her supervisor:

---

[19] *Id.* at 828.

[20] *See Delaware State Sportsmen's Assn. v. Garvin,* 196 A.3d 1254, 1276-77 (Del Super. Oct. 11, 2018) (discussing why permitting unencumbered warrantless administrative searches would grant law enforcement unfettered discretion, which in turn would violate the Fourth and Fourteenth Amendments).

[21] *Id.*

[22] *State v. Faulkner*, 2017 WL 5905576, at *1 (Del. Super. Nov. 30, 2017) (citing *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993).

[23] *DOC BCC 7.19* § V & VII (A)(1).

[24] *Id.* § VII (A)(1) (emphasis added).

[25] *Id.* § VII (A)(5)(a).

8

1. The officer has knowledge or sufficient reason to believe the offender possesses contraband;
2. The officer has knowledge or sufficient reason to believe the offender is in violation of probation or parole;
3. There is information from a reliable informant indicating the offender possesses contraband or is violating the law;
4. The information from the informant is corroborated; and
5. Approval for the search has been obtained from a Supervisor, a Manager, or the Director.  If approval is not obtained prior to the search, list the exigent circumstances on the Search Checklist requiring you to proceed with the search.[26]

As a final matter, the Delaware Supreme Court  held in  *Pendleton v. State* that although the Procedure may be fairly read to include the requirement for a written check-list to be completed prior to a search, P & P need *not* complete a physical copy of the checklist in order to substantially comply with the Procedure.[27] In this regard, P & P substantially complies with Procedure 7.19 if there is reasonable articulable suspicion of a probation violation, the officer and supervisor discuss the factors, and the supervisor approves the search.[28]

### B.  P & P Substantially Complied with Procedure 7.19

Here, the Court found the testimony of Officers Porter and Duquette credible. Combined, their testimony established by a preponderance of the evidence that Officer Porter considered each of Procedure 7.19's factors.  He then fully discussed them with Officer Duquette and received approval for the search.

Regarding the first factor, Officer Porter had reasonable articulable suspicion to believe that Mr. Coleman possessed two firearms in his motel room.  First, Officer

---

[26] *Id*. § VII (E).
[27] *Pendleton v. State*, 990 A.2d 417, 420 (Del. 2010).
[28] *Id.*

Cunningham worked directly with Officer Porter in a joint investigation of Mr. Coleman. Second, pursuant to that investigation, Officer Cunningham told Officer Porter that (1) Mr. Coleman admitted that he had purchased two firearms for $700 and that (2) Mr. Coleman kept them in his Capitol Inn motel room. Officer Porter received this detailed information directly from a co-worker and fellow law enforcement officer. Accordingly, Officer Porter had more than a hunch that Mr. Coleman possessed contraband and committed new crimes.

As to the second factor, Officer Porter knew that Mr. Coleman was a prohibited person based on prior contacts and readily accessible criminal records. He also knew that Mr. Coleman was a Level III probationer and that if Mr. Coleman committed a new criminal offense, he would be in violation of that probation. Given Officer Porter's personal experience with Mr. Coleman, and his review of readily available criminal history and probation records, he possessed reasonable suspicion that Mr. Coleman violated his probation by illegally possessing two firearms in the room P & P sought to search.

For purposes of the third factor described above, Officer Cunningham should be considered the informant who gave Officer Porter the information. Here, there was not a confidential informant or other person who was unknown to the probation officer. Rather, Officer Cunningham and Officer Porter worked with each other on the Governor's Task Force. In fact, in this case, they worked together on the same investigation that targeted Mr. Coleman. Based upon that relationship and the detail in the admission, the Court finds that Officer Porter considered Officer Cunningham's information to be detailed, consistent, and that Officer Cunningham provided the information for a valid law enforcement reason.[29] In addition, because

---

[29] *See DOC BCC 7.19* § VII (E)(3) b. (providing factors that P & P should examine when assessing an informant's credibility to include, *inter alia*, examining the detail of the information, its

the two officers participated in the same task force, Officer Porter justifiably relied on the information pursuant to the collective knowledge doctrine.[30] In this final sense, *for purposes of search and seizure analysis*, Officer Porter may as well have heard the admission directly from Mr. Coleman.[31]

The fourth factor in this multi-factor analysis addresses the degree of corroboration necessary to accept the "tip." Here, less external corroboration is required for two reasons: first, it became the collective knowledge of the officers, and second, it contained Mr. Coleman's admission. Namely, Officer Cunningham told Officer Porter that he had identified Mr. Coleman both by voice and phone number. In the call, Mr. Coleman described the two firearms in detail and admitted they were located at his probation-listed address, Capitol Inn room number 117. An admission, by nature, is significantly self-corroborating. Furthermore, Officer Porter independently corroborated portions of the admission by verifying Mr. Coleman's probation-listed residence in DACS (provided to P & P by Mr. Coleman at his probation intake meeting). Finally, Officer Porter personally observed Mr. Coleman enter the room before he called his supervisor, Officer Duquette.

Regarding the fifth and final factor, Officer Cunningham's supervisor, Officer Duquette, approved the search. Both officers testified credibly that they discussed the items on the checklist prior to the search and that Officer Duquette approved it.

---

consistency, whether the informant was reliable in the past, and why the informant supplied the information).

[30] *Holmes,* 2015 WL 5168374, at *5 (recognizing that when performing search and seizure analysis, a court may rely on the premise that the arresting officer need not have personally witnessed the underlying circumstances that give rise to a conclusion of reasonable suspicion or probable cause, but can rather rely on the assumption that his or her fellow officer's judgment is correct.). In this case, application of the collective knowledge doctrine alone demonstrates that the State satisfied the informant-related checklist factor.

[31] *Id.*

In support of his motion, Mr. Coleman relies upon the Superior Court's decision in *State v. Harris*,[32] which is distinguishable. There, the Superior Court found after a hearing, *as an issue of fact*, that the State did not meet its burden of demonstrating substantial compliance.[33] It made that factual finding based upon inconsistencies in the hearing testimony and documentary evidence.[34] The court further found that the checklist was neither approved nor discussed.[35] Here, Officers Porter and Duquette orally completed the checklist prior to the search, and then physically completed it shortly after the search.

More aptly, Mr. Coleman's circumstances resemble the facts in *Pendelton v. State*.[36] There, the Delaware Supreme Court's holding set important parameters for what constitutes substantial compliance.[37] Namely, in *Pendelton*, the Court distinguished *Harris* by recognizing the factual nature of the inquiry, while explaining that an administrative search that otherwise follows the Procedure is lawful as long as the officer and supervisor fully *discussed* the five factors.[38] The Court's holding in *Pendelton* provides that P & P need not complete a written checklist if it otherwise substantially complies with the Procedure.[39]

When applying the *Pendelton* decision's holding to the record in this case, the State proved that the officer and supervisor considered and discussed all five factors prior to the search. Furthermore, both testified credibly that they completed the checklist digitally within twenty-four hours of the search. Under the circumstances of this case, the officers' completion of the digital version of the checklist after the

---

[32] *State v. Harris,* 2007 WL 642069 (Del. Super. Feb. 27, 2007).
[33] *Id.* at *2.
[34] *Id.*
[35] *Id.*
[36] *Pendleton,* 990 A.2d 417.
[37] *Id.* at 420.
[38] *Id.*
[39] *Id.*

12

search does not detract from the Court's finding that P & P substantially complied with the Procedure.

As a final matter, Mr. Coleman argues that the Court cannot consider his wiretap admission because the State did not comply with a portion of the wiretap statute. That statute, 11 *Del. C.* § 2407(h), provides in part:

> [t]he contents of any intercepted wire, oral or electronic communication or evidence derived therefrom may not be received in evidence or otherwise disclosed in any trial, hearing or other proceeding in the courts of this State unless each party, not less than 10 days before the trial, hearing, or proceeding, has been furnished with a copy of the court order and accompanying application under which the interception was authorized.

For several reasons, Mr. Coleman's objection to the admission of his admission on statutory grounds is misguided. First, Mr. Coleman's written motion to suppress did not challenge the lawfulness of the wiretap. Superior Court Criminal Rule 41(f) requires that the movant "state the grounds upon which it is made with sufficient specificity to give the state reasonable notice of the issues and to enable the court to determine what proceedings are appropriate to address them." Here, his written motion addressed only whether P & P substantially complied with Procedure 7.19. It did not place the State or the Court on fair notice of the wiretap issue.

Second, the subsection quoted above provides that evidence "may not be received" if the State fails to provide the defendant the application and order for the wiretap. Mr. Coleman first raised the issue after the Court had "received" the evidence and closed the evidentiary record. During the first hearing session and thereafter, he failed to object to the evidence on this statutory basis. By failing to raise the objection before closing arguments, he waived it.

Third, the State represented that it, in fact, timely provided the statutorily required items to Mr. Coleman's new attorney. The State further represented that

Mr. Coleman did not ask the State to separately produce the materials in the revocation proceedings. Mr. Coleman's new attorney attended some of the revocation hearing sessions virtually and according to Mr. Coleman, his attorney requested the revocation hearing transcripts. Mr. Coleman also stated that his attorney provided some of those transcripts to him between hearing sessions. Given that backdrop, when the State produced the items to Mr. Coleman's attorney, the State complied with the statute.

Here, after considering the totality of the evidence necessary to evaluate P & P's reasonable suspicion, the State met its burden. P & P substantially complied with Procedure 7.19 and Mr. Coleman's request to suppress the evidence must be denied.[40]

## IV. MR. COLEMAN'S VIOLATIONS OF PROBATION AND CONDITIONAL RELEASE

For purposes of the revocation proceedings, the Court has considered the evidence presented during the entirety of the four evidentiary sessions.[41] The Court will first discuss the standards applicable to probation and conditional release revocation hearings. It will then explain why the State presented sufficient evidence to demonstrate that Mr. Coleman violated his probation and conditional release.

---

[40] Mr. Coleman argued for the first time, on the final day of the hearing in closing arguments, that the Court cannot consider his admission on the call because of 11 *Del. C.* § 2407(h).

[41] Prior to the hearing, the Court notified the parties that it would not require duplication of evidence between the suppression proceeding and the revocation proceeding. Rather, the Court elected to marshal the proceedings, in the event that it ultimately denied the suppression hearing. In that event, the Court intended to consider the evidence admitted in the suppression hearing together with any supplemental evidence provided after the close of the suppression record for purposes of its violation decision.

## A. Applicable Standards for Probation and Conditional Release Revocation Hearings

In a violation of probation hearing, the burden is on the State to prove by a preponderance of the evidence that the defendant violated his probation.[42] As in a suppression hearing, hearsay is admissible in revocation hearings.[43] Nevertheless, the State cannot rely entirely upon hearsay.[44] There must also be "some competent evidence to prove the violation asserted."[45] Competent evidence is "evidence that would be admissible in a . . . trial and is proof that the defendant violated the terms of [his or her] probation."[46] In this regard, what would be inadmissible hearsay evidence at trial, is too untrustworthy a basis to terminate a person's freedom if that hearsay is unaccompanied by at least some corroborating trial-admissible evidence.[47]

As a final matter, Delaware's sentencing statutes consider conditional release to be a period of parole that in certain cases is deemed served prior to any probationary terms.[48] Nevertheless, a defendant most frequently serves his or her probationary term concurrently with his or her term of conditional release.[49] When the Superior Court considers the two matters, it applies the same burden of proof and evidentiary constraints. Here, the Court considers the two concurrently.[50]

---

[42] *Rossi v. State*, 140 A.3d 1115, 1120 (Del. 2016) (citation omitted).

[43] *Id.* at 1117 (quoting *Collins v. State*, 897 A.2d 159, 160 (Del. 2006) to explain that the State must prove by a preponderance of the evidence that the "conduct of the probationer has not been as good as required by the conditions of probation").

[44] *Id.* at 1122.

[45] *Brown v. State*, 249 A.2d 269, 272 (Del. 1968).

[46] *Rossi*, 140 A.3d at 1119.

[47] *Id.* at 1119–20 (quoting *Brown*, 249 A.2d at 272). *See also State v. Hopkins*, 2016 WL 6958697, at *2 (Del. Super. Nov. 23, 2016) (explaining in the context of a suppression hearing contesting probable cause that hearsay alone is an insufficient basis to support a probable cause finding).

[48] *Austin v. State,* 2011 WL 2449506, at *1 (Del. June 20, 2011) (TABLE).

[49] *Potts v. State,* 2018 WL 3156853, at *1 (Del. June 26, 2018) (TABLE).

[50] *See Oliver v. State*, 2015 WL 179390, at *1 (Del. 2015) (TABLE) (providing that it is immaterial to the Court regarding whether a defendant is on conditional release when adjudicating a VOP

### B. Violation of Mr. Coleman's probation and conditional release

Here, the Court revokes Mr. Coleman's probation and conditional release because he violated both. Because he was a convicted felon, the relevant statute made him a person prohibited. As such, he committed criminal offenses by illegally possessing firearms and ammunition. The State proved he committed these new crimes through both hearsay, and credible evidence.

At the outset, Mr. Coleman's intercepted phone statement qualified as an admission that he committed new criminal conduct.[51] Although the testimony regarding that admission came only from Officer Porter (Officer Cunningham did not testify at the hearing), the evidence nevertheless deserves significant weight under the circumstances. Moreover, in addition to Mr. Coleman's statement, the State presented direct evidence that P & P recovered the two firearms of the precise make and caliber that Mr. Coleman referenced in the phone call. As a result, the State sufficiently corroborated Mr. Coleman's hearsay-relayed admission with credible evidence that he violated his probation and conditional release.

Furthermore, the State proved more likely than not that Mr. Coleman possessed the firearms and ammunition in his motel room. Again, Mr. Coleman's admission to purchasing the weapons strongly supports that finding. In addition, P & P recovered the firearms and ammunition at the address Mr. Coleman had identified as his residence. Further corroborating circumstances include P & P's recovery of paperwork in the room that contained Mr. Coleman's name. Finally, the State presented credible testimony from a fingerprint examiner that identified Mr.

---

because both violations are served concurrently and the Court may revoke them "at any time" and resentence the defendant); *see also Ramsey v. State*, 2019 WL 1319761, at \*1 (Del. March 22, 2019) (TABLE) (recognizing it to be appropriate for the Superior Court to consider revoking both conditional release and probation in the same hearing based upon the same evidence).

[51] D.R.E. 801(d)(2).

Coleman's latent fingerprint on one of the weapon's magazines that P & P seized from Mr. Coleman's room.

On balance, the State's burden of proof did not require it to prove Mr. Coleman's conduct beyond a reasonable doubt. Mr. Coleman's obligation to avoid new criminal conduct flowed concurrently from the terms of his probation and conditional release. Here, the State met its burden by demonstrating that Mr. Coleman committed new criminal conduct by a preponderance of the evidence.

## V.    CONCLUSION

For the reasons discussed, P & P substantially complied with Procedure 7.19 and lawfully searched Mr. Coleman's motel room. His suppression motion is therefore **DENIED.** Furthermore, after considering the seized evidence and Mr. Coleman's admission, he violated his conditional release and probation. They must be **REVOKED**. Resentencing on both will be scheduled virtually, as soon as practical, as permitted by the current Judicial Emergency Order.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Judge

17