Charles **PERRY**, Defendant Below, Appellant,

v.

**STATE of Delaware**, Plaintiff Below, Appellee.

No. 425, 1998.

Supreme Court of Delaware.

Submitted: Oct. 26, 1999.
Decided: Nov. 29, 1999.

J. Dallas Winslow, Jr., of the Office of Public Defender, Wilmington, Delaware, for appellant.

John Williams, of the Department of Justice, Dover, Delaware, for appellee.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

HOLLAND, Justice:

The defendant-appellant, Charles Perry ("Perry"), appeals from the Superior Court's final judgment following a "fast track" Violation of Probation ("VOP") hearing. According to Perry, the Superior Court did not follows its own rules and did not afford him "the minimum requirements of due process."[1] The record supports Perry's contentions. Therefore, this matter is reversed and remanded for further proceedings in accordance with this opinion.

## Facts

In November 1995, Perry was indicted by a New Castle County grand jury on charges of Kidnapping, Threatening and Assaulting Dorothy Perry ("Dorothy"). In October 1996, Perry entered a guilty plea in the New Jersey Superior Court to having violated a New Jersey restraining order. The New Jersey charges were related to Perry's unauthorized contact with Dorothy. As part of his sentence, the New Jersey Superior Court ordered Perry to have no contact with Dorothy or with Perry's son, Sean Justin Perry ("Sean"), except as expressly authorized "and in accordance with any order issued by the [New Jersey] Family Court."

In May 1997, Perry entered a Robinson plea in the Delaware Superior Court to one count of Assault in the Second Degree and one count of Possession of a Deadly Weapon During the Commission of a Felony. After the entry of that plea but before sentencing, Perry wrote letters to Sean on June 19, 1997, and to Dorothy on July 2 and July 7, 1997. Perry was sentenced in the Delaware Superior Court on July 18, 1997 and immediately incarcerated at the Gander Hill Prison in Delaware.

Perry's Delaware sentences were as follows: on the assault conviction, Perry received a sentence of six years at Level V, suspended after one year for five years of probation; and, for the deadly weapon conviction, Perry was sentenced to two years at Level V followed by one year of probation. The State contends that at the time these sentences were imposed, Perry was orally advised by the sentencing judge that he was to have no direct or indirect contact with Sean, Dorothy, or Dorothy's family. The record of Perry's sentencing on July 18, if a record was made, has never been transcribed.

The July 18, 1997 sentencing order was docketed by the Prothonotary on September 11, 1997. The order stated that Perry was to "have no direct or indirect contact

---

1. *Gagnon v. Scarpelli*, 411 U.S. 778, 789–90, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

with Dorothy Perry or her family, and no direct or indirect contact with Sean Perry, unless pursuant to a Family Court Order." The record reflects that neither Perry nor his attorney was sent a copy of the written sentencing order.

By letter dated September 8, 1997, Perry wrote to the Family Court in New Jersey and requested permission to correspond with Sean. By letter dated September 12, 1997, Karen S. Keeney ("Keeney"), a representative of the New Jersey Family Court, Domestic Violence Unit, responded to Perry's request. Keeney advised Perry that he could contact Sean by mail.

Between October 7 and October 16, 1997, Perry wrote to Sean four times. Perry also wrote to Dorothy's adult son, Scott Carrigan ("Scott") once on October 15, 1997. During this period, Perry remained incarcerated at the Gander Hill Prison in Delaware as a result of the sentences imposed on July 18, 1997.

In a letter dated October 23, 1997, Keeney advised Perry that her previous letter of September 12, 1997, was issued in error. Keeney directed Perry to stop corresponding with Sean. Upon receipt of Keeney's letter, Perry stopped writing to Sean. Perry continued to write to Scott: once on October 30, 1997 and again on November 7, 1997.

### Simultaneous Proceedings

### Criminal Contempt Indictment

### Violation of Probation Hearing

In April 1998, Perry was indicted by a New Castle County grand jury on ten counts of criminal contempt for having mailed the letters from Gander Hill Prison to Dorothy, Sean and Scott. The indictment charged Perry with violating the no-contact provisions of the New Jersey and Delaware sentencing orders.[2] As a result of the criminal conduct alleged in the indictment, Perry was also placed on a "fast track" VOP hearing schedule for having violated the deferred or unexecuted probationary term of his July 18, 1997 Delaware sentence.[3]

It does not appear that Perry was provided with written notice of the VOP charge. Instead, the record reflects that a summons was issued to Perry on May 4, 1998, in the criminal contempt case. The summons commanded that Perry appear in the Superior Court on May 21, 1998, for a "fast track/[case] review hearing." The summons was mailed to Perry at an incorrect address, and was returned "non est." [4]

The record does not reflect how the Prothonotary ascertained that Perry was incarcerated. Because Perry was incarcerated, however, it appears that the prison authorities were advised by the New Castle County Prothonotary to bring Perry to the Superior Court for a VOP hearing. If there was a written notice of that hearing, it has not been identified or provided to this Court. The Prothonotary apparently also advised the Public Defender, who had represented Perry at the July 18, 1997 sentencing, to be present at the VOP hearing.

The Superior Court held the VOP hearing on August 24, 1998. The judge who presided at the VOP hearing was not the same judge who had sentenced Perry on July 18, 1997. Perry's attorney advised the presiding judge that Perry was not on probation but was incarcerated at the time of the offenses alleged in the April 1998 indictment. The presiding judge was also advised that neither Perry nor his attorney had received a copy of the written sentencing order. There was no transcript at the

---

**2.** *See* Appendix to this opinion.

**3.** The Delaware Superior Court apparently places a VOP case on the "fast track" calendar when the violator has been charged with new crimes.

**4.** *"Non est inventus"* is defined as "the return of a sheriff on a writ when the defendant or person to be served or arrested is not found in his jurisdiction." Webster's Third New International Dictionary 1536 (1961).

VOP hearing of the July 18, 1997 sentencing.

Of the ten contacts that allegedly comprised Perry's probation violation, three consisted of letters mailed to Scott. Perry testified at the VOP hearing that he was unaware that the Delaware Superior Court's no contact provisions extended to Scott.[5] Of the remaining seven contacts, three of those contacts, i.e., Perry's letters to Dorothy and Sean in June and July 1997, occurred before Perry's Delaware sentencing. The remaining four contacts, Perry's four letters to Sean in October 1997 were made only after Perry received express permission from Keeney to correspond by mail with Sean. Once Keeney realized her mistake and withdrew permission to correspond with Sean, Perry's contacts with Sean ceased.

Perry's attorney explained that Perry's conduct was mitigated by several factors. First, while undergoing the highly emotional process of sentencing, Perry had to rely exclusively on what he may have been told about having no contact with Dorothy or anyone else in her family. Second, Perry never received a copy of the written sentencing order. Third, since Perry was incarcerated immediately after his sentencing in July 1997, his attorney did not have an opportunity to review the conditions of the sentence with Perry. Fourth, since Perry was incarcerated and had not started serving the deferred probation, no probation officer had explained the written sentencing order to Perry.

At the conclusion of the hearing, the Superior Court found Perry guilty of having violated his "deferred" probation. The judge, who presided at the VOP hearing, stated:

> The bottom line here is that when [the sentencing judge] sentenced the defendant in July of 1997, [the sentencing

judge] made it crystal clear that he was not to have any contact with the woman in question, or members of her family. That was then codified in an order that was entered later, a written order. Writing to a New Jersey Court doesn't really strike me as the way you find out what a Delaware Court is intending by its Court order.

The Superior Court revoked Perry's probation and resentenced him, on the assault conviction, to six years at Level V incarceration, suspended after three years for three years of probation. In addition, the Superior Court reimposed the original sentence for the weapon conviction, i.e., two years at Level V followed by one year of probation, to run consecutively with the sentence on the assault conviction.

### Due Process Requirements

### Criminal Rule 32.1

### Revocation of Probation Hearing

 The Superior Court has broad authority to terminate probationary sentences "at any time."[6] Accordingly, this Court has held that the Superior Court may revoke a grant of probation before its actual commencement.[7] Consequently, the Superior Court had the authority to revoke Perry's deferred or unexecuted probationary sentence.

 Perry alleges the VOP hearing conducted by the Superior Court violated the rights afforded to him by Superior Court Criminal Rule 32.1 and the Due Process Clause of the United States Constitution. The United States Supreme Court has held that due process does not necessitate that an indigent person be afforded the usual "trial rights" in a probation violation proceeding.[8] Nevertheless, Perry was entitled to a VOP hearing that comported

---

5. The New Jersey Superior Court's no contact provision did not extend to Scott.

6. 11 *Del.C.* § 4333.

7. *Williams v. State*, Del.Supr., 560 A.2d 1012, 1013 (1989).

8. *Gagnon v. Scarpelli*, 411 U.S. 778, 789–90, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

with the "minimum requirements of due process."

■ The procedural limitation on the revocation of probation in state court proceedings is imposed by the protections of the Due Process Clause of the Fourteenth Amendment.[9] The "minimum requirements of due process" at a hearing to consider a revocation of probation have been summarized as follows:

(a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.[10]

Similar safeguards are reflected in Delaware Superior Court Criminal Rule 32.1, which provides:

(a) *Revocation of partial confinement or probation.* Whenever a person is taken or held in custody on the grounds that the person has violated a condition of partial confinement or probation, the person shall be brought without unreasonable delay before a committing magistrate or a judge of Superior Court for the purpose of fixing bail and, if not released on bail, shall be afforded a prompt hearing before a judge of Superior Court on the charge of violation. The person shall be given:

(A) Written notice of the alleged violation;

(B) Disclosure of the evidence against the person;

(C) An opportunity to appear and to present evidence in the person's own behalf;

(D) The opportunity to question adverse witnesses; and

(E) Notice of the person's right to retain counsel and, in cases in which fundamental fairness requires, to the assignment of counsel if the person is unable to obtain counsel.

(b) *Modification of partial confinement or probation.* The requirements of subdivision (a) of this rule shall apply before the terms or conditions of partial confinement or probation can be modified, unless the relief to be granted to the person on partial confinement or probation upon the person's request or the court's own motion is favorable to the person, and the attorney general, after having been given notice of the proposed relief and a reasonable opportunity to object, has not objected. An extension of the term of partial confinement or probation is not favorable to the person for the purposes of this rule.

### *This Case*

### *Perry's Rights Denied*

The State argues that Perry was adequately informed of the no-contact provisions at sentencing, on July 18, 1997, and also in the sentencing order that was docketed on September 11, 1997. It is undisputed, however, that Perry did not receive a copy of the sentencing order. Furthermore, the judge who presided at the VOP hearing was not the same judge who sentenced Perry on July 18, 1997. The VOP judge had no first-hand knowledge of the original sentence and did not have a transcript of the July 18, 1997 sentencing.

---

9. *Black v. Romano,* 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985).

10. *Gagnon v. Scarpelli,* 411 U.S. at 786, 93 S.Ct. at 1761–62 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)).

Indeed, there is no indication that the July 1997 sentencing transcript exists. It was fundamentally unfair to conclude that Perry violated the terms of his July 18, 1997 sentence without having a transcript of that proceeding, since it is undisputed that neither Perry nor his attorney received a copy of the subsequent written sentencing order. Without the July 1997 sentencing transcript, this Court is unable to ascertain whether or not the no-contact provisions were indeed made "crystal clear" to Perry, as indicated by the Superior Court at the VOP hearing.

As a result of the letters sent by Perry from the Gander Hill Prison the State initiated two parallel proceedings. First, Perry was indicted and charged with criminal contempt of the Delaware and New Jersey sentencing orders. Second, Perry was charged with a violation of his deferred probation.

The sequence of the two proceedings provided the State with procedural advantages. If the criminal charges were tried first, Perry would have been entitled to the full panoply of rights that are guaranteed to any defendant. Those convictions, if any, could have then constituted the basis for revoking Perry's unexecuted probation.

The State, however, proceeded with the VOP hearing first. The State used the unproven criminal charges in the April 1998 indictment as the basis for the alleged violation. This gave the State an advantage because Perry was not entitled to the usual "trial rights" at a probation violation proceeding. The State entered a *nolle prosequi* regarding the unproven criminal charges in the April 1998 indictment immediately after Perry was found to have violated his deferred probation.

The record reflects that Perry was not afforded "the minimum requirements of due process." [11] The record also reflects that the Superior Court VOP hearing did not comport with the requirements of Su-

perior Court Criminal Rule 32.1. Furthermore, this is one of the exceptional VOP proceedings in which a defendant is entitled to be represented by counsel. [12]

### Conclusion

Perry is entitled to a new VOP hearing (i) upon notice, pursuant to Superior Court Criminal Rule 32.1; (ii) after preparation of the July 1997 sentencing transcript; and (iii) with Perry having the continued representation of counsel from the Public Defender's Office. This judgment of the Superior Court is reversed, and this matter is remanded for further proceedings in accordance with this Opinion.

### APPENDIX

### COUNT I. A MISDEMEANOR

#### # N 98–04–1484

CRIMINAL CONTEMPT, in violation of Title 11, Section 1271(3) of the Delaware Code of 1974, as amended.

CHARLES PERRY, on or about the 19th day of June, 1997, in the County of New Castle, State of Delaware, did intentionally disobey a Court Order issued by the New Jersey Superior Court on October 4, 1996 by contacting Sean Perry.

### COUNT II. A MISDEMEANOR

#### # N 98–04–1485

CRIMINAL CONTEMPT, in violation of Title 11, Section 1271(3) of the Delaware Code of 1974, as amended.

CHARLES PERRY, on or about the 2nd day of July, 1997, in the County of New Castle, State of Delaware did intentionally disobey a Court order issued by the New Jersey Superior Court on October 4, 1996, by contacting Kathy Perry.

---

**11.** *Gagnon v. Scarpelli*, 411 U.S. 778, 789–90, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

**12.** *Jones v. State*, Del.Supr., 560 A.2d 1056 (1989).

## COUNT III. A MISDEMEANOR

### # N 98-04-1486

CRIMINAL CONTEMPT, in violation of Title 11, Section 1271(3) of the Delaware Code of 1974, as amended.

CHARLES PERRY, on or around the 7th day of July, 1997, in the County of New Castle, State of Delaware did intentionally disobey a Court Order issued by the New Jersey Superior Court on October 4, 1996 by contacting Dorothy Perry.

## COUNT IV. A MISDEMEANOR

### # N 98-04-1487

CRIMINAL CONTEMPT, in violation of Title 11, Section 1271(3) of the Delaware Code of 1974, as amended.

CHARLES PERRY, on or about the 7th day of October, 1997, in the County of New Castle, State of Delaware did intentionally disobey a Court Order issued by Judge Alford, of the Delaware Superior Court on July 18, 1997, by contacting Sean Perry by mail, in violation of said order.

## COUNT V. A MISDEMEANOR

### # N 98-04-1488

CRIMINAL CONTEMPT, in violation of Title 11, Section 1271(3) of the Delaware Code of 1974, as amended.

CHARLES PERRY, on or about the 7th day of October, 1997, in the County of New Castle, State of Delaware, did intentionally disobey a Court Order issued by the New Jersey Superior Court on October 4, 1996 by contacting Sean Perry, in violation of said order.

## COUNT VI. A MISDEMEANOR

### # N 98-04-1489

CRIMINAL CONTEMPT, in violation of Title 11, Section 1271(3) of the Delaware Code of 1974, as amended.

CHARLES PERRY, on or around the 15th day of October, 1997, in the County of New Castle, State of Delaware did intentionally disobey a Court Order issued by Judge Alford, of the Delaware Superior Court on July 18, 1997, by contacting Scott Carrigan.

## COUNT VII. A MISDEMEANOR

### # N 98-04-1490

CRIMINAL CONTEMPT, in violation of Title 11, Section 1271(3) of the Delaware Code of 1974, as amended.

CHARLES PERRY, on or around the 16th day of October, 1997, in the County of New Castle, State of Delaware, did intentionally disobey a Court Order issued by Judge Alford, of the Delaware Superior Court on July 18, 1997, by contacting Sean Perry by mail, in violation of said order.

## COUNT VIII. A MISDEMEANOR

### # N 98-04-1491

CRIMINAL CONTEMPT, in violation of Title 11, Section 1271(3) of the Delaware Code of 1974, as amended.

CHARLES PERRY, on or about the 16th day of October, 1997, in the County of New Castle, State of Delaware did intentionally disobey a Court Order issued by the New Jersey Superior Court on October 4, 1996 by contacting Sean Perry, in violation of said order.

## COUNT IX. A MISDEMEANOR

### # N 98-04-1492

CRIMINAL CONTEMPT, in violation of Title 11, Section 1271(3) of the Delaware Code of 1974, as amended.

CHARLES PERRY, on or around the 30th day of October, 1997, in the County of New Castle, State of Delaware did intentionally disobey a Court Order issued by Judge Alford, of the Delaware Superior Court on July 18, 1997, by contacting Scott Carrigan.

COUNT X. A MISDEMEANOR

# N 98–04–1493

CRIMINAL CONTEMPT, in violation of Title 11, Section 1271(3) of the Delaware Code of 1974, as amended.

CHARLES PERRY, on or around the 7th day of November, 1997, in the County of New Castle, State of Delaware did intentionally disobey a Court Order issued by Judge Alford, of the Delaware Superior Court on July 18, 1997, by contacting Scott Carrigan, in violation of said order.