IN THE SUPREME COURT OF THE STATE OF DELAWARE


JAMES L. PLACHES,                        §
                                         §    No. 126, 2020
  Defendant Below, Appellant,   §
                                         §
                                         §    Court Below:  Superior Court
  v.                            §    of the State of Delaware
                                         §
                                         §
STATE OF DELAWARE,                       §     C.A. Nos. 00912004522 & 1402007837
                                         §
  Plaintiff Below, Appellee.    §



Submitted:   April 20, 2022
Decided:     June 6, 2022



Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court.  **REVERSED** and **REMANDED**.


Patrick J. Collins, Esquire, Collins & Associates, Wilmington, Delaware *for Appellant*.


John Williams, Esquire, Department of Justice, Dover, Delaware *for Appellee.*




**VALIHURA**, Justice, for the Majority:

Before this Court is an appeal from a February 24, 2020 Superior Court Violation of Probation ("VOP") hearing where the court held that James L. Plaches ("Plaches") violated his probation after he admitted to police contact. The court sentenced Plaches to seven years of unsuspended prison time, followed by community supervision with conditions.[1]

On appeal, Plaches argues that the Superior Court's decision should be reversed because he could not have violated his probation by complying with a condition of his probation, namely, reporting police contact. Plaches argues that the court specifically found one fact, police contact, and based on that finding, the Superior Court erroneously held that "'obviously' the [c]ourt must find that [Plaches] violated the terms and conditions of his probation."[2] Plaches asserts this was an abuse of discretion.

The State's burden to prove a violation of probation requires the State to "prove by a preponderance of the evidence that the 'conduct of the probationer has not been as good as required by the conditions of probation.'"[3] We are unable to determine on this record what evidence the Superior Court relied on when it found Plaches in violation of his probation. For the reasons set forth below, we **REVERSE** the Superior Court's finding that Plaches violated his probation and **REMAND** this case to the trial court for

---

[1] A64–84 (Feb. 24, 2020 Hr'g).

[2] Opening Br. at 17; *see* A82 (Feb. 24, 2020 Hr'g).

[3] *Rossi v. State*, 140 A.3d 1115, 1117 (Del. 2016) (quoting *Collins v. State*, 897 A.2d 159, 160 (Del. 2006)).

2

proceedings consistent with this opinion, which would include conducting an evidentiary hearing to determine whether a violation of probation occurred.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaches' Initial Guilty Plea, Incarceration, and Terms of Probation

Plaches was arrested on December 9, 2009, and pleaded guilty to the following three charges on July 7, 2010:  Rape Third Degree, Breach of Conditions, and Tampering with a Witness.[4]  He was sentenced to thirty-two years of Level V imprisonment, suspended after two years followed by additional periods of probation.  As a result, Plaches was classified as a Tier 3 sex offender.[5]

After completion of Plaches' Level V incarceration time, Plaches served approximately 21 terms of probation — none of which was completed successfully.[6]  Prior to the events leading to this appeal, Plaches' most recent violation of probation occurred on May 22, 2018.  During that time, the Superior Court resentenced Plaches to the Level V Key Program.[7]  Plaches successfully completed the Key Program and the balance of his Level V time was suspended for four concurrent terms of Level III GPS supervision.[8]  Plaches' Level III supervision had certain conditions, such as successful completion of an

---

[4] A1–2, A4 (Superior Ct. Docket).  The remaining charges were dismissed.  A4 (Superior Ct. Docket).

[5] A corrected sentence order did not alter the two-year term of imprisonment.

[6] A31 (Violation Report).  According to the Docket, Plaches violated his probation on September 13, 2013, March 18, 2014, June 12, 2014, March 3, 2017, and May 22, 2018.  A1 (Superior Ct. Docket).

[7] A31 (Violation Report).

[8] *Id.*  The term GPS stands for Global Positioning System, which uses satellites to determine where someone is located.

Intensive Outpatient Treatment Program, maintaining his GPS equipment, and no contact with any minors.[9]  Plaches was also immediately referred to treatment at the Treatment Access Center ("TASC").

In May of 2019, Plaches was enrolled in the Kent County Mental Health Court. Shortly after enrollment, Plaches was sanctioned for a positive urine screen, which prompted an increase in his treatment.  He was referred to two programs that provide clinical mental health services, namely, ARGO and IOP.[10]

Two months later, Plaches was committed to Sussex Violation of Probation Center ("SVOP") because he began missing IOP appointments.  After he was released from SVOP, Plaches admitted himself to Dover Behavioral Health in an attempt to "get his meds straight."[11]  Plaches was released from Dover Behavioral Health in August of 2019 and started receiving mental health treatment from Mind and Body.[12]

As of October 2019, Plaches' reports showed he was doing well with his TASC and Mind and Body treatment and that he had obtained employment with Easter Seals as a caregiver for his elderly mother.

---

[9] *Id.*  Plaches was released from his Level V time on April 5, 2019.

[10] ARGO, which stands for Aquila Behavioral Health Georgetown Argo Institute and IOP, the Intensive Outpatient Program at SUN Behavioral in Georgetown, are programs that help patients who may be transitioning from inpatient care by providing clinical mental health services.

[11] *Id.*

[12] The Mind and Body Consortium offers counseling and mental health services.

B.    *The Alleged VOP at Issue*

On Friday, January 3, 2020, police were called to Plaches' residence located in Felton, Delaware (the "Residence") to check on the well-being of Christina Hays ("Hays"), Plaches' significant other at the time.[13]  The report identifies Samantha Clendaniel as the "reporting person" who stated that Hays had been "drinking and was acting weird and she wanted the police to check and make sure Hays was ok."[14]  During the welfare check, Hays stated to police that "she had been drinking and did not want to be around her roommate James Plaches."[15]  Hays asked if the police could take her to a hotel because she did not want to stay at her residence.  The police officer transported Hays to a local hotel.

Later that night, Plaches called the 24-hour probation and parole monitoring center (the "Monitoring Center") to inform them that family members were going to be visiting and were planning to bring children.[16]  In order to avoid a violation of his probation, Plaches requested to stay at a local hotel for the night.  The Monitoring Center granted his request.[17]

---

[13] The police reports refer to Plaches' significant other as "Christina L Hays," but certain transcripts refer to her as "Hayes."  We will use the spelling provided in the police reports.

[14] A48 (Jan. 3, 2020 Police Report).

[15] *Id.*

[16] A38 (Jan. 24, 2020 VOP Hr'g); A31 (Violation Report).

[17] A73–74 (Feb. 24, 2020 Hr'g) (Plaches: "I contacted Probation and informed them that my sister was coming with the grandchildren and was due to be there anytime, okay.  I would like to stay at a local hotel for the weekend and was given permission from Probation."); A78 (Feb. 24, 2020 Hr'g) (Probation Officer Vorous: "Permission was given for him to leave the house by the monitoring center and the on-call officer that Friday night.  It was not given by me.  But because he called and said there were children in the house, I'm trying to do the right thing, they permitted him to go.").

A few days later on January 5, 2020, Plaches again contacted the Monitoring Center. According to the violation report submitted by his Probation Officer, Jessica Vorous ("Vorous"), Plaches advised the Monitoring Center that he could not return to his Residence because his relatives were still there with children.[18] Plaches stated that he needed to relocate to a different local hotel. The Monitoring Center again granted his request.[19]

On January 6, 2020, Plaches had a scheduled meeting with Vorous.[20] At this meeting, Plaches reported to Vorous that he had police contact on January 3 and experienced a temporary residence relocation over the weekend. When describing the police contact, Plaches allegedly told Vorous that an unannounced family visit caused tension, and the Felton Police Department was contacted "due to a domestic call involving [Plaches'] fiancé and her sister, and that he was not involved."[21] According to Vorous, she questioned Plaches' weekend arrangements, and Plaches was adamant that his relocation was due to children at his Residence.[22] He maintained that he did not know when the

---

[18] A31 (Violation Report); A38 (Jan. 24, 2020 VOP Hr'g) (stating that Plaches called the Monitoring Center on January 3, 2020 (a Friday), and called "[a]gain, on Sunday" (January 5th)).

[19] A38 (Jan. 24, 2020 VOP Hr'g) (Probation Officer Vorous: "Again, on Sunday, he called in to the monitoring center to say, the children are still there, I need to say at another hotel. He was allowed to stay at that hotel.").

[20] A31 (Violation Report) ("On January 6, 2020, Mr. Plaches reported to the Probation and Parole office for his scheduled reporting.").

[21] A28, A31 (Violation Report).

[22] A38–39 (Jan. 24, 2020 VOP Hr'g) (reflecting statements by Probation Officer Vorous).

6

relatives were leaving, and he had no choice but to relocate until the children left so that he would be compliant with his probation terms and conditions.[23]

Plaches returned to the probation office the next day, on January 7, 2020, and advised Vorous that he could return to the Residence because the children had left.[24]

Later that day, Felton police were dispatched to the Residence "in reference to a physical domestic in progress."[25] Upon arrival, Hays advised the police officers that she and Plaches had an argument in Rodney Village where Plaches punched her in the face. Then, Hays changed her story and stated that the incident happened in Camden. Due to the alleged location of the incident, it was determined that the police department in Camden would be handling the report. In the meantime, Hays was transported to Bayhealth Kent General Hospital by ambulance. Once finished at the hospital, Hays was transported by the same police officer to the Residence to retrieve some belongings.

On January 8, 2020, the Camden Police Department issued their report regarding the alleged domestic violence dispute that occurred between Hays and Plaches the previous day.[26] According to the police report, Hays and Plaches were involved in a verbal dispute in a store in Camden. After leaving the store, Hays "lightly smacked Plaches on the arm" and in return, Plaches "used [] his fist to backhand her in the face."[27] "No visible injuries

---

[23] *Id.*; A31 (Violation Report).

[24] A31 (Violation Report); A39 (Jan. 24, 2020 VOP Hr'g) ("Tuesday [January 7, 2020], [Plaches] came in to see me. He said, talked to my girlfriend, the children are leaving.").

[25] A49 (Jan. 7, 2020 Police Report).

[26] A50–51 (Jan. 8, 2020 Police Report).

[27] A51 (Jan. 8, 2020 Police Report).

7

were observed" on Hays by the officer.[28]  Although the officer interviewed Hays about the incident, the case was closed because of her lack of cooperation.

That same day, Vorous received a call from "family members in New Hampshire"[29] who stated there were no children at Plaches' Residence over the weekend.[30]  The family members also stated that they were concerned for Hays, who was allegedly attempting to leave Plaches over the weekend.[31]  Vorous stated that according to the family members, "[Hays] was going from hotel to hotel, he was following her, and they were engaged in a domestic dispute over the weekend."[32]

Vorous followed up with Hays that same day (January 8, 2020) and later reported — contrary to what the investigating police officers reported — that Hays had visible bruises[33] and was extremely frightened of Plaches.  After Vorous' conversations with Hays and the family members, Vorous concluded that Plaches had lied to the Monitoring Center

---

[28] *Id.*

[29] It is unclear as to whose family members these are.  Vorous refers to these individuals as "family members and residents of his reported residence," suggesting in one section of the Violation Report, that she spoke to Plaches' family members, but Vorous also refers to these individuals as "Mr. Plaches' fiancé's concerned family members in New Hampshire" in another section of the Violation Report.  *See* A27, A31 (Violation Report).

[30] A39 (Jan. 24, 2020 VOP Hr'g) ("Wednesday [January 8, 2020], I get a call from family members in New Hampshire.  There were no children there at all all weekend."); A31 (Violation Report).

[31] A31–32 (Violation Report); A39 (Jan. 24, 2020 VOP Hr'g).

[32] A39 (Jan. 24, 2020 VOP Hr'g).

[33] We note that Vorous's statement about Hays's visible bruises was unsworn and not subject to cross-examination.  Vorous also wrote in her violation report that the police officers who contacted Hays on January 8 "observed evidence of abuse," (A31) (Violation Report), but the relevant police report states that the officers — a Camden Police Department patrolman and a Delaware State Trooper — on the date of the alleged assault "did not see any physical injury to [Hays]."  A51 (Jan. 8, 2020 Police Report).

8

in order to stay with Hays. However, according to Vorous' report, no charges were filed, and Plaches was not arrested.[34]

### C.    *Vorous' Administrative Warrant*

On January 10, 2020, Vorous filed an Administrative Warrant alleging that Plaches violated the terms of his probation.[35] Specifically, Vorous alleged that Plaches had violated three conditions, namely, Conditions Two, Five, and Thirteen of his Level III probation.

First, the Administrative Warrant stated that Plaches violated Condition Two of his probation which required that Plaches report "any new arrest, conviction, or police contact within 72 hours to [his] supervising officer."[36] According to the Administrative Warrant, Plaches violated this condition because "[o]n January 6, 2020, Mr. Plaches reported [to Vorous that] police contact [occurred on January 3] due to a family dispute between [Hays] and her sister," and "[f]urther investigation revealed this police contact never occurred."[37]

Second, Condition Five required him to "report any changes of residence . . . within 72 hours to [his] supervising officer."[38] Plaches allegedly violated this condition on January 3, 2020, and January 5, 2020 when he contacted the probation and parole office Monitoring Center and advised them that he needed to move from his residence due to an

---

[34] A31–32 (Violation Report).

[35] A26 (Administrative Warrant).

[36] *Id.*

[37] *Id.* The Administrative Warrant (filed January 10, 2020) states that an investigation revealed "police contact never occurred." *Id.* However, at the January 24, 2020 VOP Hearing, Vorous clarified that Plaches reported police contact, police contact *did* occur, but that "[t]he reason for the police contact was false," (*i.e.,* that a dispute between Hays and her sister did not occur). A41–42 (Jan. 24, 2020 VOP Hr'g).

[38] A26 (Administrative Warrant).

unexpected family visit involving children. The warrant also states that "[o]n January 8, 2020, it was learned that there were no children present to [sic] his report residence."[39] According to the Administrative Warrant, Plaches "lied to probation and parole in order to stay outside of [his] reported residence with [Hays]," and that permission would not have been given since no children were present at the Residence.[40] Therefore, Plaches allegedly relocated without proper probation and parole permission.

Third, Condition Thirteen of his probation required Plaches to "abide by a curfew established by [his] supervising officer."[41] Plaches allegedly violated this condition because according to Vorous, he would not have been given permission to leave the Residence, and he was not at the Residence during his 10 p.m.–6 a.m. curfew from January 3 until January 7.

### D.    *Plaches' VOP Hearings and Subsequent Arrest*

The allegations set forth in the Administrative Warrant resulted in Vorous' Violation Report charging Plaches with his sixth VOP in connection with his 2010 convictions.[42] The court held a VOP hearing on January 24, 2020.

---

[39] *Id*.

[40] *Id.*

[41] *Id.*

[42] A31 (Violation Report). The Violation Report also charges Plaches with his third VOP of his 2014 conviction.

At that hearing, the court heard from Officer Vorous who stated that although Plaches was adamant that children were at the Residence, she believed that was a lie.[43] Even though Vorous agreed that Plaches had reported the police contact, Vorous stated that the dispute he reported was a domestic dispute between his girlfriend Hays and her sister. According to Vorous, the police contact that actually occurred was Hays calling the Felton police and saying "come get me out of this house because I don't want to have to defend myself [against him]."[44] Thus, Vorous asserted that although Plaches had reported police contact, he had lied about the nature of it.

The court asked Plaches whether he was disputing Officer Vorous's statement that the police contact that he reported was not the police contact that occurred. Plaches denied having a domestic dispute with Hays, and instead, recited his version of the events. According to Plaches, he and Hays argued over Hays's sister's plans to visit at the residence with her nieces and nephews and over Plaches' concern that he could not leave his mother who was under his care at the Residence. Plaches maintained that this argument resulted in police contact, which Plaches reported to Vorous and admitted to on the record. Thus, Plaches confirmed that he was disputing Officer Vorous's account of the events.

The court concluded that because "[Plaches] is disputing the allegations . . . [the court is] going to have to set this thing down for a contested hearing."[45] The court was

---

[43] A41 (Jan. 24, 2020 VOP Hr'g) (Probation Officer Vorous: "The allegation is not that--yes, he reported where he was going. He lied. He was given permission to go because there was [*sic*] children in the house. There were no children in that house.").

[44] *Id.*

[45] A43 (Jan. 24, 2020 VOP Hr'g).

adamant that a contested hearing had to be scheduled even though Vorous included the police reports.[46] While trying to schedule the contested VOP hearing, the court stated that the parties will "have to bring witnesses [] here" and that the court will have to "make a finding" because "someone is not telling the truth here."[47] The contested VOP hearing was scheduled for a month later.

---

> THE COURT: Are you disputing those events?
>
> [PLACHES]: Well, I'm disputing the police contact of events, yes, sir, Your Honor,
> . . . .
>
> THE COURT: Okay. But he is disputing the allegations here, so it sounds to me like I'm going to have to set this thing down for a contested hearing.

A42–43 (Jan. 24, 2020 VOP Hr'g).

[46] A43 (Jan. 24, 2020 VOP Hr'g).

> PROBATION OFFICER VOROUS: Your Honor, I have included the police reports.
>
> THE COURT: I have to schedule a contested hearing.
>
> [PLACHES]: Your Honor, I did not get arrested. I mean I would have been arrested if I did something wrong.
>
> THE COURT: It would be clearer for the court if he was arrested. He was not arrested apparently.
>
> PROBATION OFFICER VOROUS: Understood, understood.

*Id.*

[47] A43–44 (Jan 24, 2020 VOP Hr'g). The following colloquy occurred:

> THE COURT: So this is a matter in dispute. So I can make no finding today, but I can set--if the State wants to continue with this hearing, then I must set it down for a contested hearing which you'll have to have witnesses.
>
> THE COURT: All right. We'll set it down for a contested hearing, Madam Clerk. What day can we give it?
>
> [PLACHES]: I can't ask for bail? I didn't get no [*sic*] bail or nothing, not even from the judge.
>
> THE COURT: You know what that means, sir. That means we'll have to bring witnesses in here.
>
> [PLACHES]: Yes, sir.

Between hearings, the police arrested Plaches and charged him with falsely reporting an incident.[48] This arrest related to Vorous' conclusion in the Violation Report that Plaches had falsely reported that children were in his Residence. The State entered a *nolle prosequi* on this charge on March 16, 2020, but the charge was pending during what was to be the contested VOP hearing on February 24, 2020.[49] Because the matter was pending prior to that hearing, Vorous filed a supplemental report which added a violation of probation based on Plaches' arrest.[50]

On February 24, 2020, the court began the VOP hearing, where both sides appeared prepared to present evidence.[51] But at the beginning of the hearing, Plaches' attorney, who was new to the case, stated that Plaches "is in agreement to admit police contact," and that Plaches "would like to be heard regarding sentencing." The court then converted the matter "from a contested VOP to a standard VOP with an admission as to police contact by the defendant."[52] The court heard from the State as to its initial recommendation of nine years at Level V incarceration. While explaining the nine-year recommendation, the State

---

THE COURT: I have to make a finding.

[PLACHES]: Yes, Your Honor.

THE COURT: That someone is not telling the truth here.

*Id.*

[48] A54–55 (Jan. 30, 2020 Warrant).

[49] A88 (Disposition Record).

[50] A58–63 (Suppl. Violation Report).

[51] A65 (Feb. 24, 2020 Hr'g). For example, Plaches appeared ready to present an affidavit from a family member, and the State appeared ready to provide Hays' testimony as she was present in the courtroom. *See* A70–71 (Feb. 24, 2020 Hr'g).

[52] A81 (Feb. 24, 2020 Hr'g).

13

mentioned that Plaches "told the police that some people were coming to his house that had children so he could get out of the house and follow Ms. Hay[s]."[53] Although the State said that it "would have witnesses today that would say that there were not children at the house," there was no testimony at this hearing.[54]

In response, the defense attorney noted that these allegations were odd stating that "[u]nlike other probationers where they are not reporting contacts [with police], Mr. Plaches took it upon himself [to advise] Probation that there was police contact and no new charges resulted out of those contacts."[55] Therefore, the alleged violation was not due to Plaches failing to report police contact, but instead, "[t]he allegation is based on the probation officer not believing what [Plaches] is saying."[56] Indeed, at the January 24 hearing, Vorous acknowledged that Plaches "did report [the] police contact,"[57] but she believed that Plaches had mischaracterized the call that caused the police to respond. Plaches' counsel also pointed out that the officer who responded to conduct the January 3 welfare check reported that Hays had a history of alcohol abuse and mental health issues. His counsel also presented a letter from Plaches' sister explaining that she and her mother's

---

[53] A66 (Feb. 24, 2020 Hr'g).

[54] *Id.* The record indicates that Hays was in the courtroom at the time of the scheduled contested VOP hearing. A70–71 (Feb. 24, 2020 Hr'g). No witnesses were sworn and no cross-examinations occurred.

[55] A69 (Feb. 24, 2020 Hr'g).

[56] A68 (Feb. 24, 2020 Hr'g).

[57] A41 (Jan. 24, 2020 Hr'g).

great grandchildren were planning a surprise visit to her mother at the Residence that weekend but that she cancelled due to an "unexpected death on January 2nd."[58]

Plaches then addressed the court. Plaches admitted to police contact but stated that the police contact did not result in an arrest or new charges.[59] The court, however, focused on Plaches' statement that he admitted to police contact.[60] Then, the court afforded the State an opportunity to respond and heard Vorous' view on the matter. Vorous' statements echoed her statements at the first hearing. She agreed that Plaches had reported the police contact, but she stated that "the police contact he reported was not the police contact that happened."[61] Further, Vorous reiterated that although permission was given to him by the

---

[58] A86 (Letter from Plaches' Sister); *see* A70 (Feb. 24 2020 Hr'g) ("We do have a notarized statement from his sister saying that she was coming from Pittsburgh that weekend, and I can hand that up to the [c]ourt.").

[59] A72–73 (Feb. 24, 2020 Hr'g).

[60] *See* A72 (Feb. 24, 2020 Hr'g). The court questioned Plaches during the hearing as follows:

> THE COURT:  But you're admitting to police contact, are you not?
>
> [PLACHES]:  I'm sorry?
>
> THE COURT:  But you're admitting to police contact?
>
> [PLACHES]:  I admit to police contact, but it was, like, I consider the contact, like, it was a positive not a negative where I was questioned and put against the car and had my ID out. It was just he come [*sic*] to the house, and, you know, just asked me what was going on. I said we had an argument. He talked to her on the stair and she was like, you know -- like, I just reported she was drinking. She was uncredible because she kind of blacks out when she's drinking. . . .  Well, what more or less I was trying to get to, my current order is no contact with children under 18, so if my mother was there and my sister showed up and I'm there at the house and they come knocking on the door and they show up, I'm in major violation right now because I'm there with kids in the house. So what I was trying to do was remove myself form the situation before they showed up.

A72–73 (Feb. 24, 2020 Hr'g).

[61] A78 (Feb. 24, 2020 Hr'g).

15

monitoring center for him to leave, it was not given by her, and permission would not have been given had it been known that there were no children in the house.

Without stating the reason for its decision, the court stated that it had heard from all parties in the matter which had "been converted from a contested VOP to a standard VOP with an admission as to police contact by the defendant."[62]  And without setting forth any findings or addressing the probation officer's admission that Plaches had reported the only police contact that he had experienced on the day in question, the court then held that "[o]bviously, the [c]ourt must find Mr. Plaches in violation of the terms and conditions of his probation."[63]  Thereafter, the court sentenced Plaches to seven years of unsuspended prison time followed by community supervision with conditions.[64]

On May 14, 2020, the court denied Plaches' motion for a sentence reduction.[65]

On March 27, 2020, Plaches filed a timely *pro se* Notice of Appeal, and filed his Opening Brief on May 7, 2021.[66]  The State filed its Motion to Affirm on May 13, 2021. This Court concluded that it was not manifest on the face of Plaches' opening brief that his appeal was without merit.  In the interest of justice, we *sua sponte* determined that counsel should be appointed to represent Plaches on appeal.

---

[62] A81 (Feb. 24, 2020 Hr'g).

[63] A82 (Feb. 24, 2020 Hr'g).

[64] A82–83 (Feb. 24, 2020 Hr'g).

[65] A89 (May 14, 2020 Superior Ct. VOP Order).

[66] A90–127 (Plaches' *Pro Se* Opening Br.).

## II.    CONTENTIONS ON APPEAL

Plaches contends that the Superior Court abused its discretion when it found him in violation for complying with a condition of his probation.  Specifically, he argues that the Superior Court erroneously held that he violated his probation based on only one fact: police contact.  Plaches asserts that he was required to report police contact, and that the police contact, which did not result in an arrest, is not a violation of his probation.  Further, he argues that the court erred when it turned the February 24, 2020 contested VOP hearing into a sentencing hearing because the court should have resolved the contested issues.  Although Plaches admitted to police *contact* during that hearing, he contends that he did not intend to admit a *violation* of probation.  Therefore, Plaches asserts that the Superior Court's decision should be reversed and that the order revoking Plaches' probation and the prison sentence should be vacated.

The State argues that the court did not abuse its discretion because Plaches violated his probation for two reasons: (1) he misrepresented the reason for the police contact, and (2) he reported a change of residence based on a false claim that there were minor children present in his Residence.  Therefore, the State argues that there was sufficient competent evidence for the Superior Court to determine that Plaches violated his probation.

## III.    STANDARD OF REVIEW

This Court reviews the Superior Court's revocation of probation for abuse of discretion.[67]

---

[67] *Brown v. State*, 249 A.2d 269, 271–72 (Del. 1968).

17

## IV.   ANALYSIS

We address Plaches' contention that this Court should reverse the trial court's revocation of his probation because there is no competent evidence that an actual violation of probation occurred.  After reviewing the record, we conclude that the basis upon which the Superior Court found Plaches to be in violation of his probation is not set forth on the record and is, therefore, unclear.  Accordingly, we remand this matter with instructions to conduct an evidentiary hearing to determine whether a violation of probation occurred.

Although "a defendant's admission of the alleged crime is considered sufficient competent evidence to revoke probation," when the "defendant has not admitted violating his probation, some competent evidence linking the defendant to the crime is necessary."[68]  Further, "when the State claims that a defendant violated probation by committing a crime, the State must produce competent evidence that shows not only that a crime occurred, but also that the defendant is linked to the crime."[69]

In *Collins v. State*, for example, the State asserted that the defendant violated his probation when he broke into his ex-girlfriend's home and caused extensive damage inside.  The only evidence that the State presented at Collins' VOP hearing was testimony from the investigating police officer.  Although the officer had personally observed the damage at the home, he had no personal knowledge of who or what caused that damage.  The Superior Court found that the defendant violated probation based on the officer's personal

---

[68] *Collins*, 897 A.2d at 161 (footnote omitted).

[69] *Rossi*, 140 A.3d at 1123.

18

observation of the damage and his recitations of inadmissible hearsay. On appeal, this Court reversed, noting that "[a]lthough physical evidence of the damage to the apartment may have indicated that criminal conduct had occurred, it did not connect Collins to that crime," and, therefore, the revocation of his probation was an abuse of discretion.[70]

In this case, Plaches' admission to having police contact is competent evidence connecting him to the scene of an alleged domestic dispute where police were dispatched on January 3. However, the only information the State presented at Plaches' VOP hearing consisted of Vorous' unsworn statements.[71] Similar to the investigating police officer in *Collins*, Vorous had no personal knowledge of what prompted the police contact on January 3. Rather, Vorous provided information about that incident based on inadmissible hearsay, from what Hays and Hays' family allegedly told her.

Plaches contends that Vorous made several untrue statements. He claims that her statement that Hays called the police on January 3 to "come get me out of this house because I don't want to have to defend myself" was untrue. Rather, the police report states that Hays' sister, Samantha Clendaniel, called the police. Vorous also claimed to have seen evidence of the bruising on Hays on January 8, 2020 due to the alleged incident that

---

[70] *Collins*, 897 A.2d at 162. Our Court stated that, "[a]lthough the rules of evidence applicable to criminal trials are relaxed in violation of probation proceedings and hearsay evidence is admissible, Delaware law requires 'some competent evidence to prove the violation asserted.'" *Id*. at 160.

[71] *See id.* at 160–61 ("Although the probationer's guilt need not be established beyond a reasonable doubt, probation cannot be revoked solely upon the basis of testimony of a witness with 'no first-hand knowledge of the events constituting the violations.'") (footnote omitted); *Brown*, 249 A.2d at 271 (reversing a revocation of probation where there was no competent evidence beyond a police officer's testimony relaying information from a police report and newspaper article, that the probationer had violated her probation by committing a crime).

19

occurred on January 7, but the officers from each of three departments (Felton, Camden, and State Police) stated in their reports that they saw no evidence of injury to Hays on January 7, 2020.[72] Plaches also complains that neither Vorous nor the court considered the notarized letter from Plaches' sister who, during the weekend in question, was planning to bring her grandchildren to the Residence for a visit, but instead, relied on a call from Hays' family who were not planning to visit.

Vorous did relate that Plaches had told her directly that there were children in the house.[73] The facts surrounding whose children would be visiting are unclear. At one point, Plaches states that it was Hays' family. But, as mentioned, he also submitted a notarized letter from his sister indicating that her grandchildren would be visiting.[74] Whether Plaches was mistaken about whether and whose children would be visiting or whether he lied so that he could leave the Residence was not addressed or resolved by the Superior Court. More critically, the Superior Court never made a finding as to what its basis was for finding a violation of Condition Two which concerned the alleged incident on January 3.

Despite Hays' presence in the court room, the State did not present Hays' testimony. Based upon the statement by Plaches' counsel, the State apparently acquiesced in forgoing the evidentiary hearing. We are not faulting the State for doing so, particularly since

---

[72] *See* A51 (Jan. 8, 2020 Police Report).

[73] Vorous' statements regarding what Plaches allegedly told her during his scheduled probation meeting was not hearsay. *See* D.R.E. 801(d)(2)(A). "A statement that meets the following conditions is not hearsay: . . . (2) *An Opposing Party's Statement.* The Statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity." *Id.*

[74] A70 (Feb. 24, 2020 Hr'g).

Plaches' counsel advised the court that Plaches would admit to police contact and wished to be heard regarding sentencing. Nevertheless, we are left with a record that provides neither an adequate basis for the revocation of probation, nor a basis to find that Plaches knowingly and voluntarily waived his right to a contested evidentiary hearing.

As stated in *Rossi*, "[a]lthough the State's burden in proving a violation of probation is not an onerous one, that burden has long required that the State at least present some competent evidence that shows the defendant did not comply with the terms of his probation."[75] No doubt, absent an admission by Plaches that he violated the terms and conditions of his probation, that burden will require the State in this case to put on some evidence aside from Plaches admitting to a police contact, which, by all accounts, Plaches reported to his probation officer. "But given the serious consequences that can result from a violation of probation" — as exemplified here by the sentence of seven-years of unsuspended prison time, followed by community supervision with conditions — the requirement of competent evidence "is a reasonable one that provides the responding probationer with an important procedural protection, while still leaving the State well-positioned to prosecute probation violations much more inexpensively and efficiently than crimes."[76] The Superior Court's reliance on Plaches' admission to police contact (a term and condition of his probation) without more, does not provide a basis for finding that a

---

[75] *Rossi*, 140 A.3d at 1124. "Competent evidence" is "evidence that would be admissible in a criminal trial and is proof that the defendant violated the terms of his probation." *Id*. at 1119. As we reiterated in *Rossi*, inadmissible hearsay, without some corroborating admissible evidence, is a basis too untrustworthy to terminate a person's freedom. *Id*. at 1120.

[76] *Id.* at 1124.

crime occurred, and that Plaches was linked to that crime. Without competent evidence establishing both requirements, the revocation of Plaches' probation was an abuse of discretion.[77]

And as to whether Plaches, through counsel, waived his right to a contested VOP hearing by admitting to police contact and proceeding to sentencing, we hold that he did not. As we recently stated in *Purnell v. State*, "[w]aiver is the voluntary and intentional relinquishment of a known right."[78] "In the criminal context, it is 'incumbent upon the State to prove' waiver, and 'the courts indulge in every reasonable presumption against waiver.'"[79] "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake."[80]

---

[77] *See Brown*, 249 A.2d at 272 (concluding that "there being no competent evidence upon which to base the exercise of sound judicial discretion, the revocation of the probation and the imposition of the prison sentence constituted an abuse of discretion").

[78] *Purnell v. State*, 254 A.3d 1053, 1101 (Del. 2021) (quoting *Daskin v. Knowles*, 193 A.3d 717, 725 (Del. 2018)).

[79] *Id.* (quoting *Flamer v. State*, 490 A.2d 104, 113 (Del. 1983)). "The distinction between waiver and forfeiture is most visible in so-called 'plain error' analysis, where a forfeited allegation that a defendant's rights were violated can nevertheless be the basis for later reversal, but a waived right cannot." *Id.* at 1101 (footnotes omitted). At most, one might argue that Plaches forfeited his right to a contested VOP hearing. But even under plain error standard of review, we can and do conclude, given the potential loss of liberty at stake, that finding that he is not entitled to an evidentiary hearing under these unique circumstances would be plain error. As stated by the United States Supreme Court, "most States have recognized that there is no interest on the part of the State in revoking parole without any procedural guarantees at all." *Morrissey v. Brewer*, 408 U.S. 471, 484 (1972). Therefore, "[w]hat is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.*

[80] *Purnell*, 254 A3d at 1101 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

Revocation of probation results in a loss of liberty and entitles the probationer to a hearing with certain "minimum requirements of due process."[81]   The "minimum requirements of due process" regarding the revocation of probation have been summarized as follows:

> (a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.[82]

Similar safeguards are reflected in Delaware Superior Court Criminal Rule 32.1.[83]

In this case, the record below does not provide a clear indication that Plaches voluntarily and intentionally waived his right to a contested hearing.  Although defense counsel stated on the record, and in front of Plaches, that "[Plaches] is in agreement to admit police contact," as explained above, police contact, in and of itself, was not a violation of Plaches' probation.

Rather, the record suggests that Plaches did not understand that admitting to police contact was considered by the court to be the equivalent to admitting to a violation of probation because he repeatedly stated that the police contact did not result in new

---

[81] *See Perry v. State*, 741 A.2d 359, 363 (Del. 1999).

[82] *Id.* at 363.

[83] *See* Del. Super. Ct. Crim. R. 32.1 (setting forth the process a person should be afforded when there is a revocation of partial confinement or probation).

23

charges.[84]  Plaches did ask that he be sentenced to time served with no probation.[85] Although we could assume that Plaches, having violated probation several times before, should have understood that defense counsel's admission on the record, coupled with the request to be heard regarding sentencing, could be considered a waiver of his contested hearing, affirming the court below based on this assumption would require us to speculate as to what Plaches may or may not have understood during the February 24, 2020 hearing. We decline to do so.  Instead, we remand for an evidentiary hearing so that the Superior Court can address these matters and state its findings on the record.

Finally, the State asks us to find, alternatively, that Plaches violated the other conditions (Five and Thirteen) of his probation.  However, the Superior Court made no findings of violations of these conditions, and they are not properly the subject of this appeal.

## V.  CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is **REVERSED** and **REMANDED** for additional proceedings consistent with this opinion.

---

[84] A71 (Feb. 24, 2020 Hr'g) (Plaches: "What I would like to bring out to Your Honor, I was violated for police contact that did not result in new charges whatsoever.").  A72 (Feb. 24, 2020 Hr'g) (Plaches: "But what I'd like to get to, [Y]our Honor, is the police contact I did have, I did report like I was supposed to as of --you know, the police report . . ..  It does say I had police contact.").  A72–73 (Feb. 24, 2020 Hr'g) (Plaches: "I admit to police contact, but it was, like, I consider the contact, like, it was a positive not a negative where I was questioned and put against the car and had my ID out.").  A76 (Feb. 24, 2020 Hr'g) (Plaches: "Yes, I had police contact.  Did I get in trouble for it?  No, sir.  I did report it within my 72-hour allotted time.  And, [Y]our Honor, I'm asking for -- you know, nine years, it don't count for nine years.").

[85] A75 (Feb. 24, 2020 Hr'g) (Plaches: "With all of this information I presented to you, [Y]our Honor, I'm asking just to have time served with no probation to follow so I can leave the state and go back to my family in upstate New York.").

**VAUGHN**, Justice, dissenting:

I would find that the Superior Court did not abuse its discretion, or otherwise err, by finding that the defendant violated condition two of his probation, which required him to report police contact. I believe the record supports a conclusion that the Superior Court found that the defendant admitted a violation of that condition.[86]

Every Level III probationer receives 13 standard conditions of supervision.[87] There are additional conditions for sex offenders. In many cases, special conditions specific to the individual probationer are added. At least a general awareness that standard conditions of supervision exist becomes a part of the working, common knowledge of any experienced judge, prosecutor, or defense attorney. The probationer, of course, is expected to be aware of each condition of supervision to which he is subject. Condition two of the standard conditions, the police contact provision, requires the probationer to "report any new arrest, conviction, or police contact within 72 hours to your Supervising Officer."[88] A violation is the failure to report the police contact, not the mere fact of police contact. There are many reasons a probationer may have police contact. The probationer may be a victim of a crime that is reported to the police. The probationer may be a witness to a crime committed

---

[86] When an issue is first raised on appeal, this Court normally reviews for plain error. Since I don't believe the trial judge committed any error, the standard of review is not an issue for me.

[87] *See* SENTAC Benchbook 2021-22 at 134.

[88] *Id.*

by another, and the police may interview the probationer in connection with that crime. No probation officer would contend that police contact, by itself, without more, is a violation of probation. But even innocent police contact must be reported, and failure to report that contact violates condition two.

The condition two, five, and 13 allegations against the defendant were stated in the Administrative Warrant as follows:

> **Condition # : 2 You must report any new arrest, conviction, or police contact within 72 hours to your supervising officer.**
>
> On January 6, 2020, Mr. Plaches reported police contact due to a family dispute between his fiance and her sister. Further investigation revealed this police contact never occurred.
>
> **Condition # : 5 You must report any changes of residence and/or employment within 72 hours to your supervising officer.**
>
> On January 3, 2020, Mr. Plaches contacted the probation and parole office and advised that he needed to move from his residence due to children being present. He advised that he would be staying in a local hotel. On January 5, 2020, Mr. Plaches again contacted the probation and parole office and advised that he still could not return to his reported residence due to children being present in his home. He relocated to another local hotel. On January 8, 2020, it was learned that there were no children present to his report residence. Mr. Plaches lied to probation and parole in order to stay outside of reported residence with his fiance. Given that there were not children present at his reported residence, Mr. Plaches would not have had permission to leave his residence. Therefore, Mr. Plaches relocated without proper probation and parole permission.

26

**Condition # : 13 You must abide by a curfew established by your supervising officer.**

On January 3, 2020, Mr. Plaches contacted the probation and parole office and advised that he needed to move from his residence due to children being present. He advised he would be staying at a local hotel. On January 5, 2020, Mr. Plaches again contacted the probation and parole office and advised that he still could not return to his reported residence due to children being present in his home. He relocated to another local hotel. On January 8, 2020, it was learned that there were no children present to his report residence. Mr. Plaches lied to probation and parole in order to stay outside of reported residence with his fiance. Given that there were not children present at his reported residence, Mr. Plaches would not have had permission to leave his residence. Therefore, he was not at his reported residence during his 10pm-6am curfew from January 3 until January 7.[89]

In the Violation Report, the condition two allegation was stated more fully as follows:

**You must report any new arrest, conviction, or police contact within 72 hours to your supervising officer.**

On January 6, 2020, during an office visit, Mr. Plaches reported having police contact. He reported that Felton Police Department responded to his reported residence on January 3, 2020 due to a domestic call involving his fiance and her sister and that he was not involved. Felton Police Department complaint explains the call was in fact Mr. Plaches' fiance requesting police escort/assistance in leaving the residence due to Mr. Plaches.[90]

---

[89] App. to Opening Br. at A26. The defendant was not permitted to have contact with children because he was a sex offender.

[90] *Id*. at A28.

Officer Vorous never argued that the defendant violated his probation simply by having police contact. Her theory was that the obligation to report police contact carried with it an obligation to report police contact truthfully, that is, to report the police contact that actually occurred. The defendant reported his January 3 police contact, but reported that it involved a dispute between his girlfriend and her sister to which he was, in essence, an innocent bystander. Officer Vorous received information through the Felton Police Department report that led her to believe the defendant was the target of the January 3 contact and the contact involved a potential domestic violence situation between the defendant and his girlfriend. Her argument was that he failed to report the specific police contact that actually occurred.

At the January 24 violation of probation hearing, Officer Vorous explained her theory of the alleged condition two violation to the Superior Court in the defendant's presence:

> He did report police contact. However, that is not the police contact that occurred. The police contact that occurred was the girlfriend was calling Felton police, come get me out of this house because I don't want to have to defend myself. That is not what was related to probation.[91]

The judge asked the defendant whether he disputed the alleged condition two violation, and he responded, "Well, I'm disputing the police contact of events, yes

---

[91] *Id*. at A41.

sir."[92]  Most of the back and forth at the January 24 hearing involved conditions five and 13.  To his credit, the judge scheduled the matter for a hearing away from the distractions of a VOP calendar to a hearing date of its own, at which he could give the defendant's case his full time and attention.  This resulted in the second hearing on February 24.

That brings us to defense counsel's statement at the very beginning of the February 24 hearing that "he is in agreement to admit police contact, and we would like to be heard regarding sentencing after the State makes its recommendation."[93] I draw two inferences from defense counsel's statement.  The first is that the defendant and his attorney had decided they did not want to litigate the merits of the alleged violations.  The second is that they settled on condition two as the alleged violation they wanted to admit.

The Superior Court then asked the prosecutor for her sentencing recommendation.  She proceeded to make her sentencing comments.  She reported that she had witnesses present who would testify concerning the alleged violations of conditions five and 13.  The State did not do anything to impede the defendant from having a hearing on the merits of the alleged violations if the defendant had wanted to have one.

---

[92] *Id.* at A42.

[93] *Id*. at A65.

29

Defense counsel then proceeded with her sentencing comments. It appears from those comments that defense counsel seems to have understood the condition two allegation well enough. She said, "when I first reviewed this violation, I actually received it from another attorney in the office."[94] From this, an inference can be drawn that she reviewed and was aware of the alleged condition two violation. She also stated, "At that time, my review of the allegations is that unlike a lot of probationers, Mr. Plaches was contacting his probation officer. He's not absconding from probation. The allegation is based on the probation officer not believing what he is saying."[95] From this, it appears that defense counsel understood that the alleged violation of condition two was not merely that the defendant had police contact, but that he falsely represented the nature of the police contact and had not reported the police contact that actually occurred. This was the theory that Officer Vorous consistently explained. The defense attorney also commented with respect to conditions five and 13 that "if we were to have a hearing today, a lot of this violation comes down to whether or not Mr. Plaches was truthful in his information to Probation that there were grandkids visiting the residence he was staying at."[96]

---

[94] *Id*. at A68.

[95] *Id*.

[96] *Id*. at A70.

When the defendant made his sentencing comments, he began with police contact:

> THE DEFENDANT:  Good morning, your Honor.
>
> THE COURT:  Good morning.
>
> THE DEFENDANT:  James Plaches.  Your Honor, yes, there was police contact.  There was a domestic dispute, no hands-on or nothing like that, between my fiance and I at the time.  We are just friends now as we resituated our situation and said we want to be friends.
>
> What I would like to bring out to your Honor, I was violated for police contact that did not result in new charges whatsoever.  The officer just told me to leave her be and just stay away, and he made me pour the bottle of 99 percent alcohol out in the driveway the night he was disputed here.  That's why we were arguing, because she was drinking and we were arguing about my family coming to see my mother. [97]

After additional comments, the Superior Court interrupted:

> THE COURT:  But you're admitting to police contact?
>
> THE DEFENDANT:  I admit to police contact, but it was, like, I consider the contact, like, it was positive, not a negative where I was questioned and put against the car and had my ID out.[98]

When the defendant reported the January 3 police contact on January 6, he reported that it occurred due to a dispute between his girlfriend and her sister and he

---

[97] *Id.* at A71.

[98] *Id.* at A72-A73.

was uninvolved.  In his first sentencing comments, the defendant admitted that the January 3 police contact did not occur the way he reported it.  He admitted that it was not the result of a dispute between his girlfriend and her sister to which he was an innocent bystander.  He acknowledged that it was the result of a domestic dispute between his girlfriend and him, as Officer Vorous had alleged.  I would find that the initial sentencing comments from the defendant are an admission that he violated the police contact condition as alleged by Officer Vorous.  The fact that he had not been arrested on that occasion and he considered the contact "positive"[99] were offered as mitigation.

After defense counsel and the defendant made their comments, the judge asked the prosecutor whether she wished to respond to anything the defendant had said.  She asked the court to hear from Officer Vorous, who repeated that "yes, he did report police contact to me.  That is true.  However, the police contact he reported was not the police contact that happened."[100]

The prosecutor then readdressed the court, stating that "I think the main issue here is that he did report the police contact, but the police contact that he reported to his probation officer was not what really happened; that he lied about the police

---

[99] *Id*. at A72.

[100] *Id*. at A78.

contact."[101]  These additional comments by Officer Vorous and the prosecutor drew no request from the defendant or his attorney to readdress the Court.

I think the defendant's theory of this case, first asserted on appeal, that he and his attorney intended to admit only that he had police contact and he was wrongly found to have violated his probation for merely having police contact, is not credible. The alleged violation—that he gave his probation officer a false account of police contact—was clearly stated in the Violation Report. The allegation was stated in open court in the defendant's presence by Officer Vorous at both the January 24 and February 24 hearings. The defense attorney's sentencing comments at the February 24 hearing make it clear that she understood the allegation.

I also think the implication in the defendant's theory that the defense attorney and the Court both thought that merely having police contact alone is a violation of probation is not credible. I think the choice of words used by the defense attorney and the Court, that the defendant "admit[ted] police contact,"[102] was just a short-hand method of referring to the violation as alleged. It would make no sense for defense counsel to couple the statement that "he is in agreement to admit police contact"[103] with the statement that they would like to be heard regarding sentencing

---

[101] *Id*. at A79.

[102] *Id*. at A65, A72.

[103] *Id*.

if she did not mean that the defendant admitted a violation of condition two, failure to report police contact as alleged by Officer Vorous. It seems to me that statements made by the defendant when he addressed the court, discussed above, bear this out. I think the record is clear enough that the judge relied on admissions by defense counsel and the defendant that he violated condition two as alleged by Officer Vorous. I do not think a remand is necessary. I would affirm the judgment of the Superior Court.